Beth Creighton   OSB #97244
E-mail: *beth@sstcr.com*
J. Ashlee Albies   OSB #05185
E-mail: *ashlee@sstcr.com*
STEENSON, SCHUMANN,
TEWKSBURY CREIGHTON
& ROSE, P.C.
500 Yamhill Plaza Building
815 S.W. Second Avenue
Portland, Oregon  97204
Phone:   (503) 221-1792
Fax:     (503) 223-1516

Of Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SARINYA REABROY, | Civil No. |
| Plaintiffs, | COMPLAINT (Human Trafficking/Involuntary Servitude 18 USC § 1595 and ORS 30.867; 42 USC § 1981; Title VII; ORS Chapter 659A.030; ORS 659A.109; Retaliation, Intentional Infliction of Emotional Distress; Wage & Hour Violations) |
| vs. | |
| *TYPHOON!*, INC., STEVE KLINE and BO KLINE, | |
| Defendants. | |

DEMAND FOR JURY TRIAL

### I.

### INTRODUCTION

1.      Pursuant to 18 USC § 1595, ORS 30.867, 42 USC § 1981, 42 USC § 2000e

("Title VII"), and ORS Chapter 659A, Plaintiff alleges violations of (1) her rights to be free from

involuntary servitude and human trafficking, (2) her statutory employment right to not to be

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 SW 2nd Ave #500
Portland,  OR  97204
Tel:  (503)  221-1792

discriminated against because of her sex, national origin, and race, (3) her right to utilize the

workers' compensation system free from discrimination and harassment, (4) her right to be free

from retaliation for opposing defendants' unlawful discrimination and harassment, (5) her right

to be free from intentional infliction of emotional distress, and (6) her right to be paid her

statutory overtime wages. She seeks damages, equitable relief, attorney fees, and litigation

expenses/costs, including expert witness fees and expenses.

## II.

## JURISDICTION

2.    This court has jurisdiction by virtue of 28 USC §§ 1331, 1343, 1367, and 42 USC

§ 2000e, including supplemental jurisdiction over plaintiff's state law claims.

## III.

## PARTIES

3.    Plaintiff Sarinya Reabroy ("Reabroy") is a citizen of Thailand. She currently

resides in Oregon and has since 2003. When she arrived in Oregon, she had only rudimentary

English language skills.

4.    Defendant *Typhoon!*, Inc., ("*Typhoon!*"), is an Oregon corporation which, at all

material times herein, was in the restaurant business in Oregon and Washington and employed

more than 100 people.

5.    Defendants Steve and Bo Kline ("the Klines") are and were, at all times material

herein, principal agents of *Typhoon!* active in the management and operations of nine Thai

restaurants in Oregon and Washington. Defendant Bo Kline is a Thai national. Defendant Steve

Kline is a resident of the State of Oregon.

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and ROSE,    PC
815 SW 2nd Ave #500
Portland, OR 97204
Tel: (503) 221-1792

IV.

FACTS

6.      Between 1993 through the middle of 2003, Reabroy worked in the Royal Orchid Sheraton Hotel, in Bangkok Thailand, a luxury, 5-star hotel named one of the "Top 50 World's Best Hotels in Asia 2000-2006" by Travel + Leisure.  While Reabroy was employed at the Royal Orchid Sheraton Hotel, she enjoyed respectful treatment, eight hour work days and use of the pool and tennis courts off hours.

7.      In late 2002, Bo Kline induced Reabroy to travel to Portland and work as a line cook for *Typhoon!*, promising her a better life, better opportunities and substantial compensation. On May 28, 2003, Reabroy signed an 11-page contract to work for *Typhoon! See* Attachment A. The contract was written in English and contained many complicated legal terms.  Reabroy was not provided with a copy of the contract translated into Thai.

8.      The contract provided Reabroy was to be paid a salary of $1,500 per month, with an increase to $1,600 per month after one year.  The contract required Reabroy to pay *Typhoon!* $6,500, if she were to quit or was fired by *Typhoon!* prior to the expiration of the two year contract.  As part of her employment with *Typhoon!*, Reabroy was required to have a guarantor sign an agreement that the guarantor, "unconditionally and irrevocably" agreed to be responsible for all amounts due to *Typhoon!* pursuant to the employment agreement.

9.      Defendants paid for Reabroy's transportation costs to Portland, Oregon.  Reabroy came to Portland, Oregon in June of 2003, moving into the apartment of one of the Thai cooks who was going back to Thailand.

10.     Reabroy started work in July 2003, primarily at the *Typhoon!* Restaurant located

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,   PC
815 SW 2nd Ave #500
Portland,  OR  97204
Tel: (503)  221-1792

in Northwest Portland on NW Everett Street. Defendants forced her to work six days per week, between 55 to 70 hours per week, and without mandatory meal and rest breaks. Defendants often required her to take food home to prepare it for the next day.

11.    *Typhoon!* ruled the workplace with iron fists of intimidation, coercion and harassment, targeting their Thai workers, including Reabroy, in the following manner:

a)    Threatening Thai workers with termination or deportation, and/or terminating Thai workers when they complained about not getting breaks or days off, or about the dangerous working conditions;

b)    Seizing Thai workers' passports for extended periods of time;

c)    Deceiving Thai workers about the terms of their visas;

d)    Confiscating and withholding visas and visa applications of Thai workers;

e)    Threatening to have the Department of Homeland Security throw Thai workers into jail if they quit their employment with *Typhoon!;*

f)    Telling Thai workers that Defendant Bo Kline was "Queen of immigration" and that defendants have paid off the Department of Homeland Security to do whatever defendants want;

g)    Threatening to bring legal action against the families of Thai workers if employees quit or complained about the working conditions;

h)    Forbidding Thai workers from talking with each other about *Typhoon!* or the work conditions;

i)    Isolating Thai workers from Americans and instructing them not to talk to 'white people;

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and ROSE,    P C
815 SW 2nd Ave #500
Portland, OR 97204
Tel: (503) 221-1792

j)      Intentionally deceiving Thai workers about their rights under state and federal labor and employment laws;

k)      Intentionally deceiving Thai workers about the overtime investigation conducted by the United States Department of Labor in 2003-2004 and the subsequent payment by *Typhoon!* of $120,000 to settle the matter;

l)      Tolerating groping and fondling of the Thai workers by non-Thai coworkers;

m)      Threatening to blacklist Thai workers for all employers both within the United States and abroad;

n)      Forbidding injured Thai workers from seeing or treating with health care professionals and/or refusing them access to first aid;

o)      Requiring sick or injured Thai workers to work despite such illness or injuries;

p)      Maintaining dangerous work conditions;

q)      Subjecting Thai workers to abusive management practices, such as throwing dishes, utensils, and food at them and propositioning them for sex;

r)      Violating the Thai workers' reasonable expectations of privacy by encouraging spying and illegal tape recording of each other in the workplace;

s)      Searching Thai workers' private mail;

t)      Displaying sacred Buddhist symbols in defaced or disrespectful ways;

u)      Displaying beheaded and dismembered Buddhas in a manner offensive to Thai workers who were of the Buddhist faith;

v)      Forcing the Thai workers to kowtow to the owners and purchase presents for them;

STEENSON
SCHUMANN
TEWKSBURY
CREIGHTON
and ROSE, PC
815 SW 2nd Ave #500
Portland, OR 97204
Tel: (503) 221-1792

w)    Using profanity to unjustly criticize work performance or the loyalty of the Thai workers; and

x)    Confiscating Thai workers' tax returns;

12.    Defendants also discriminated against Reabroy on the basis of her national origin in the following ways, among others:

a)    Ordering her to work overtime hours without pay;

b)    Forbidding her from taking statutorily required breaks;

c)    Subjecting her to derogatory and demeaning treatment;

d)    Forcing her to eat the skin of chickens and pork and vegetable stems, rather than food that was served to the American employees or customers;

e)    Excessively monitoring and micro managing her work; and

f)    Threatening her with termination and deportation, unless she worked the excessive hours and under the hostile work environment as described above.

13.    In September of 2006, Reabroy sliced her fingertip off while working. She hit a vein and a considerable amount of blood spurted out. The *Typhoon!* kitchen manager, Nanda "Nuch" Sybim, discouraged Reabroy from going to the doctor and told Reabroy that she could not afford to pay the health care costs of going to an American doctor. She failed to inform Reabroy that the workers' compensation system in Oregon pays for injuries sustained to workers while they are working. Thereafter, she ridiculed and berated Reabroy when another employee offered to work Reabroy's next shift. She would not allow the schedule change and would not allow Reabroy to use the gloves, provided to *Typhoon!'s* American workers, to cover her wound.

14.    In April 2007, Reabroy was experiencing pain and discomfort due to a hand and

STEENSON
SCHUMANN
TEWKSBURY
CREIGHTON
and ROSE, PC
815 SW 2nd Ave #500
Portland, OR 97204
Tel: (503) 221-1792

wrist injury. She went to the doctor, who advised her that she was entitled to have her workplace

injuries paid for through the workers' compensation system. She requested the forms from

*Typhoon!'s* kitchen manager, Nanda "Nuch" Sybim, to apply for workers' compensation

benefits. At first, Sybim refused to give her the forms. Then, Sybin threw the forms at her and

screamed in a very public (in front of both staff and customers) and humiliating manner that

Reabroy was trying to sue *Typhoon!,* implying she was a thief. That evening, Sybin called

Reabroy throughout the night and directed employees to yell outside Reabroy's window and

throw rocks at her window. The next day, Sybin tried to get Reabroy to apologize, brutally and

violently grabbing Reabroy's arm, intimidating her until she wept.

15.     In fall of 2003, Reabroy complained to Bo Kline about the restaurant manager

soliciting sexual relations with the kitchen staff and providing more favorable treatment to Thai

workers who were receptive to his advances. At that time, Reabroy also complained about the

dangerous and unsanitary working conditions; punishment for any illness or injury and being

forced to work 12 hour days and still take work home with her; being treated in a disrespectful

and demeaning manner; and not being given the professional opportunities promised to her. Bo

Kline responded that she did not care what happened in the kitchen and that the restaurant

manager was in charge. Bo Kline told Reabroy that, if Reabroy complained again, she would be

sent home, implying that her family would be forced to pay for another Thai cook to be recruited

and relocated to Portland. Reabroy was thereafter forced to clean the storage room and lift heavy

supplies, a heavy work task usually reserved for those being punished. Reabroy did not complain

further.

16.     Plaintiff satisfactorily performed and satisfied all that was required of her in her

STEENSON
SCHUMANN
TEWKSBURY
CREIGHTON
and ROSE, PC
815 SW 2nd Ave #500
Portland, OR 97204
Tel: (503) 221-1792

original employment agreement.

17.    As a result of Defendants' conduct herein, Reabroy has suffered and continues to

suffer emotional distress and anxiety, humiliation, trauma, pain and suffering. Reabroy has and

will continue to suffer interference with and a disruption of her work life, lost wages, and

damage to her career and to her future earning capacity. She has also been forced to retain

counsel and has paid out litigation related expenses to enforce her rights under state and federal

law.

18.    At all times material, defendants acted intentionally, with malice or reckless

indifference to plaintiff's civil rights, and were on notice of the illegality of their actions from

previous federal litigation alleging national origin discrimination, race discrimination, retaliation,

wrongful constructive discharge, and wage and hour violations. *See Khumyam v. Typhoon Inc!,*

Case No. CV-03-0085-KI.

### V.

### FIRST CLAIM FOR RELIEF

### (Human Trafficking 18 USC § 1590, et seq; ORS 30.867)

19.    Plaintiff realleges the above.

20.    Defendants knowingly recruited, transported and harbored Plaintiff in violation of

laws prohibiting peonage, slavery, involuntary servitude and forced labor within the meaning of

the provisions of the Trafficking Victim Protections Act, 18 USC § 1590 and ORS 163.266, by

enticing or inducing Plaintiff to board a vessel or to go any other place with the intent that

Plaintiff may be made or held in involuntary servitude and/or slavery.

21.    Defendants attempted to and did subject Plaintiff to forced labor in violation of 18

STEENSON
SCHUMANN
TEWKSBURY
CREIGHTON
and ROSE, PC
815 SW 2nd Ave #500
Portland, OR 97204
Tel: (503) 221-1792

USC § 1590, 18 USC § 1592, ORS 163.263 and ORS 163.266.

22.    Defendants knowingly attempted to and did physically restrain and/or threaten Plaintiff with serious harm in order to obtain the labor and services of Plaintiff, in violation of 18 USC § 1589(1).

23.    Defendants knowingly attempted to and did obtain the labor and services of Plaintiff using a scheme, plan or pattern which, in the totality of the circumstances, was intended to coerce and did coerce Plaintiff to believe that she would suffer serious harm if she were to leave the employ of *Typhoon!*, in violation of 18 USC § 1589(2).

24.    Defendants' scheme to isolate Plaintiff, to force her to live in conditions causing psychological harm, and to limit her outside contacts, including unlawful discrimination, in violation of 42 USC § 1981, was designed to coerce Plaintiff to believe that she would suffer serious harm if she were to leave the employ of Defendants.

25.    Defendants threatened Plaintiff with deportation and deceived Plaintiff about the terms of her visas in a manner that constitutes an abuse of the legal process under 18 USC § 1589(3) and 163.263(1)(a).

26.    Defendants knowingly confiscated and possessed Plaintiff's immigration documentation in furtherance of trafficking, peonage, slavery, involuntary servitude or forced labor.

27.    Defendants threatened to report Plaintiff to a government agency for the purpose of arrest or deportation, if she complained about the working conditions at *Typhoon!* or quit her

STEENSON
SCHUMANN
TEWKSBURY
CREIGHTON
and ROSE,    PC
815 SW 2nd Ave #500
Portland, OR  97204
Tel:  (503)  221-1792

employment with *Typhoon!.*

28.     Defendants threatened to collect an unlawful debt.

29.     Plaintiff suffered harm as a result of these actions.

30.     Plaintiff is entitled to economic, noneconomic, and punitive damages in a amount

to be determined at trial along with any other relief deemed appropriate, including attorney fees

and litigation expenses/costs.

### VI.

### SECOND CLAIM FOR RELIEF

### (National Origin Discrimination)

28.     Plaintiff realleges the above.

29.     As described above, defendants discriminated against Plaintiff in the terms,

conditions, and privileges of her employment on the basis of her national origin, in violation of

42 USC § 1981, Title VII, and ORS Chapter 659A, entitling her to an award of economic and

non-economic damages, in amounts to be determined at trial.

30.     Plaintiff filed a timely administrative complaint with the Bureau of Labor and

Industries and has received a right to sue letter.  She has requested to withdraw her complaint

from the Equal Employment Opportunity Commission ("EEOC") as well.

31.     Under federal law, Plaintiff is entitled an award of punitive damages, in an

amount to be determined at trial.

32.     Pursuant to 42 USC § 1988, ORS 659A.885(1), and ORS 20.107, Plaintiff should

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and   ROSE,    PC
815 SW 2nd Ave #500
Portland, OR 97204
Tel: (503) 221-1792

be awarded attorney fees and litigation expenses/costs incurred herein.

## VII.

### THIRD CLAIM FOR RELIEF

#### (Workers Compensation Discrimination)

33.    Plaintiff realleges the above.

34.    Defendants engaged in the above conduct, as described herein, because Plaintiff applied for benefits or invoked or utilized the procedures provided for in ORS Chapter 656.

35.    Plaintiff should be awarded economic, non-economic, and punitive damages, in amounts to be determined at trial.

36.    Plaintiff should be awarded attorney fees and litigation expenses/costs.

## VIII.

### FOURTH CLAIM FOR RELIEF

#### (Sexual Harassment)

37.    Plaintiff realleges the above.

38.    As herein described, defendants discriminated against Plaintiff in the terms, conditions, and privileges of her employment on the basis of her sex, in violation of Title VII and ORS 659.030(1)(a) & (b).

39.    Additionally, as described herein, Plaintiff was subjected to unwelcome, and objectively severe and pervasive sexually offensive remarks and conduct which altered the terms and conditions of her employment, unreasonably interfered with her ability to perform her job,

STEENSON
SCHUMANN
TEWKSBURY
CREIGHTON
and  ROSE,   PC
815 SW 2nd Ave #500
Portland, OR  97204
Tel:  (503)  221-1792

and created an abusive working environment, in violation of Title VII and ORS 659.030.

40.    Plaintiff filed a timely administrative complaint with the Bureau of Labor and Industries and has received a right to sue letter.  She has requested to withdraw her complaint from the EEOC as well.

41.    Plaintiff should be awarded her lost back pay with interest, front pay, and work related benefits, including, but not limited to, the amounts necessary to offset the income tax consequences of receiving a lump sum payment, against Defendants in amounts to be determined at trial.

42.    Plaintiff should be awarded compensatory damages and punitive damages against defendants for the emotional distress she has suffered, in amounts to be determined at trial.

43.    Plaintiff should be awarded attorney fees and litigation expenses/costs, including expert witness fees, against Defendants pursuant to 42 USC § 1988(b) & (c), ORS 659.121(1) and ORS 20.107.

## IX.

## FIFTH CLAIM FOR RELIEF

### (Retaliation)

44.    Plaintiff realleges the above.

45.    As described above, Defendants retaliated against plaintiff by Defendants in violation of 42 USC § 1981, Title VII, 29 USC § 207, and ORS Chapter 659A, entitling her to an award of economic and non-economic damages, in amounts to be determined at trial.

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,    PC
815 SW 2nd Ave #500
Portland, OR 97204
Tel: (503) 221-1792

46.     Under federal law, Plaintiff is entitled an award of punitive damages, in an

amount to be determined at trial.

47.     Pursuant to 42 USC § 1988, 29 USC § 216(b), ORS 659A.885(1), and ORS

20.107, Plaintiff should be awarded attorney fees and litigation expenses/costs incurred herein.

## X.

## SIXTH CLAIM FOR RELIEF

### (Aiding and Abetting)

48.     As applicable, plaintiff incorporates the above.

49.     Defendants Steve Kline and Bo Kline violated ORS 659A.030(1)(g) by

participating in and assisting ongoing discrimination and retaliation against plaintiff based on her

opposition to unlawful employment practices.

50.     Plaintiff seeks a permanent injunction enjoining the Kline Defendants from

engaging in discriminatory or retaliatory employment practices once Plaintiff is reinstated to her

position.

51.     Plaintiff should be awarded attorney fees and litigation expenses/costs incurred

herein.

## XI.

## SEVENTH CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress)

52.     As applicable, plaintiff incorporates the above.

53.     As described above, Defendants inflicted severe emotional distress on Reabroy.

54.     As a result of the above, Reabroy is entitled to an award of economic and non-

STEENSON
SCHUMANN
TEWKSBURY
CREIGHTON
and ROSE, PC
815 SW 2nd Ave #500
Portland, OR 97204
Tel: (503) 221-1792

economic damages against Defendants.

55.     Reabroy should be awarded her costs, including expert witness fees, against Defendants.

## XII.

## EIGHTH CLAIM FOR RELIEF

### (Wage & Hour Violations)

56.     Plaintiff realleges the above.

57.     Pursuant to 29 USC § 207 and ORS 653.261, plaintiff is entitled an award of her unpaid overtime, in amounts to be determined at trial, with prejudgement interest accrued from the time each overtime payment should have been paid.

58.     Pursuant to 29 USC § 216(b), Plaintiff should be awarded liquidated damages equivalent to the amount of wages owed.

59.     Pursuant to ORS 653.055 and ORS 652.150, Plaintiff should be awarded a civil penalty in the maximum amounts mandated by ORS 652.150.

60.     Pursuant to 29 USC § 216(b) and ORS 653.055, Plaintiff should be awarded her attorney fees and litigation expenses/costs incurred herein.

WHEREFORE, plaintiff request the Court to:

1.     Accept jurisdiction of this case and grant the jury trial request;

2.     Award Plaintiff all available damages and equitable relief consistent with the claims above against Defendants in amounts to be determined at trial;

3.     Award Plaintiff punitive damages consistent with the claims above against defendant in amounts to be determined at trial;

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N
and  ROSE,     PC
815 SW 2nd Ave #500
Portland, OR 97204
Tel: (503) 221-1792

4.    Award Plaintiff her reasonable attorney fees and litigation expenses/costs herein,

including expert witness fees and expenses, consistent with the claims above against defendant;

and

5.    Grant such other relief as is just and proper.

PLAINTIFF HEREBY DEMAND A JURY TRIAL.

Dated this ___8___ th day of October 2008.

STEENSON, SCHUMANN, TEWKSBURY
CREIGHTON & ROSE, P.C.


_Beth Creighton_
BETH CREIGHTON   OSB #97224
J. ASHLEE ALBIES,   OSB #05185
Telephone: (503) 221-1792
Of Attorneys for Plaintiff

STEENSON
SCHUMANN
TEWKSBURY
CREIGHTON
and ROSE, PC
815 SW 2nd Ave #500
Portland, OR 97204
Tel: (503) 221-1792

# EMPLOYMENT AGREEMENT FOR
# EMPLOYEES ON E-2 VISAS

**BETWEEN**   **:**    **Typhoon!**                                 **(*"Typhoon!"*)**

                          **720 SW Washington, Ste. 305**
                          **Portland, Oregon 97205**

                          **Phone:**      **(503) 222-7991**
                          **Fax:**         **(503) 222-7993**

**AND**        **:**     **Sarinya REABROY**                          **("Employee")**
                          **24 Suktawee Apt. Soi 82**
                          **Charoenkrung Rd**
                          **Bangkoleam, Yannawa, Bangkok 10120**
                          **Thailand**
                          **Home Phone: 02-289-3511**
                          **Work Phone: 02-266-0123**

## Recitals

**Whereas,** *Typhoon!* operates a number of Thai restaurants; and

**Whereas,** *Typhoon!* desires to employ Employee as a key employee on an E-2 Visa, and Employee desires to work for *Typhoon!*;

## Agreement

**NOW, THEREFORE,** in consideration of the mutual covenants set forth in this Assignment, the parties agree as follows:

1.    **Employee's Representations and Warranties.** Employee represents and warrants that:

    1.1.    She is a citizen of Thailand who qualifies for an E-2 Visa permitting Employee to work for *Typhoon!* as a manager;

    1.2.    Employee is required to leave the United States when her employment with *Typhoon!* terminates;

    1.3.    Employee understands that an E-2 Visa permits her to stay in the United States only during the period of employment with *Typhoon!*;

    1.4.    Employee further understands that pursuant to the E-2 Visa, Employee may legally work only for *Typhoon!* and for no other employer while in the United States;

**1.5.**    Employee agrees to pay all of Employee's obligations to *Typhoon!* and to any owner, officer, employee, agent or other representative of *Typhoon!*, as well as any obligation guaranteed by *Typhoon!* or its owners, officers, employees, agents or other representatives, in a timely manner, but in any event, no later than one (1) business day after termination of employment with *Typhoon!*;

**1.6.**    Employee agrees that Employee's E-2 Visa is governed by the United States federal immigration law allowing employment authorization only for *Typhoon!* restaurants, that employment for another employer is prohibited, and that upon termination of employment, employee is out of status and required to depart the U.S. or face deportation proceedings. Employee agrees that upon termination of employment with *Typhoon!* by either party, the Employee shall return to Thailand at her own expense on the first day after the first business day following termination, or as soon thereafter as possible, but, in any event, in accordance with the terms of Employee's E-2 Visa;

**1.7.**    Employee agrees to indemnify *Typhoon!* for any and all damages resulting from any false representations made by Employee with regard to the E-2 Visa, as well as any and all damages resulting from Employee's failure to fully comply with all of the requirements of her E-2 Visa, damages may include, but are not limited to, reasonable attorneys' costs and fees incurred at arbitration, on any trial or on appeal.

The terms of this Section 1 shall survive termination of this Agreement for any reason.

**2. Return Airline Ticket.**  If Employee remains employed with *Typhoon!* for at least six (6) months, *Typhoon!* will buy Employee's airline ticket back to Thailand at the end of Employee's employment with *Typhoon!*. Notwithstanding the above, *Typhoon!* shall in any event buy only one airline ticket per employee per lifetime. For example, if an employee concludes his or her employment and uses *Typhoon!*'s ticket to return to Thailand, the employee will not be entitled to any additional airline ticket from *Typhoon!*, even if the employee chooses to come back to work for *Typhoon!* at a later date. Employee will receive the airline ticket if and when Employee's employment with *Typhoon!* is terminated by *Typhoon!*. This ticket is to ensure that Employee will have sufficient funds to return to Thailand immediately following the expiration of Employee's employment with *Typhoon!*. If Employee chooses to stay in the United States after the expiration of Employee's employment with *Typhoon!*, Employee will be out of visa status and *Typhoon!* will no longer be responsible for providing Employee with an airline ticket.

**3.    Guarantor.**  Employee agrees to have a Guarantor, agreeable to *Typhoon!*, execute the Guaranty attached hereto as Exhibit A and incorporated herein, whereby the Guarantor agrees to be responsible for all amounts which may become due to *Typhoon!* by Employee pursuant to Sections 1.5, 1.7 and 5.5 hereof.

**4.    Employment.**  As a condition precedent to Employee's employment by *Typhoon!*, Employee must obtain a valid E-2 Visa. Upon obtaining such Visa, Employee agrees to work for *Typhoon!* as a manager and in any other capacity deemed appropriate by *Typhoon!* in accordance with the terms of this Agreement and as permitted by the terms of Employee's E-2 Visa.

**5.    Term of Employment.**

**5.1.**    The term of Employee's employment shall commence as of Employee's first day of work for *Typhoon!* and terminate on the earlier of (a) two (2) years from its commencement, or (b) the expiration of Employee's current E-2 Visa term, unless terminated earlier under a provision of this Agreement.

**5.2.**    *Typhoon!* may terminate Employee's employment at will, at any time with or without cause; provided, however, that in the event of a termination without cause, *Typhoon!* shall give Employee one week's notice of the termination. *Typhoon!* may, at its discretion, relieve Employee of all active duties during that week.

**5.3.**    *Typhoon!* may also terminate Employee's employment for cause. "Cause" may include, but is not limited to: (a) a continued failure of Employee to substantially perform her duties; (b) excessive absenteeism; (c) any breach by Employee of this Agreement; (d) misconduct by Employee that results in damage to the business or reputation of *Typhoon!*; or (e) any misrepresentation by Employee, written or oral, as to the Employee's qualifications, experience, references, education, or any other job-related representation made by Employee to *Typhoon!* that influenced *Typhoon!*'s decision to hire or retain Employee.

**5.4.**    To apply to renew Employee's employment contract with *Typhoon!* after the term covered hereby, Employee must notify Stephen Kline, Bo Kline or their designated representative at least ninety (90) days prior to the expiration of this Agreement, and provide *Typhoon!* with a requested commencement date for the renewal of this Agreement (after any time off for personal leave). A renewal of employment will require that a new Agreement and Guaranty be executed. The separately executed Noncompetition and Nonsolicitation Agreement shall remain in full force and effect, however, regardless of whether or not there is a gap in Employee's employment with *Typhoon!*. The decision of whether to grant the Employee's request to renew this Agreement is solely within the discretion of Stephen Kline and Bo Kline.

**5.5.**    Employee agrees that if she opts to leave *Typhoon!* employment at any time prior to the expiration of this Agreement as discussed in Section 5.1 hereof, Employee shall pay *Typhoon!* Six Thousand Five Hundred Dollars ($6,500). Employee and *Typhoon!* agree that measurement of *Typhoon!*'s damages in such a case would be extremely difficult and that this amount is a sufficient and reasonable estimate to the injury to *Typhoon!* and this provision shall be enforceable as a reimbursement to *Typhoon!* for the costs *Typhoon!* incurred in hiring Employee.

**5.6.**    Employee agrees that if she is terminated from *Typhoon!* employment "for cause," as defined in Section 5.3(e), above (employee misrepresentation), Employee shall pay *Typhoon!* Six Thousand Five Hundred Dollars ($6,500). Employee and *Typhoon!* agree that measurement of *Typhoon!*'s damages in such a case would be extremely difficult and that this amount is a sufficient and reasonable estimate to the injury to *Typhoon!* and this provision shall be enforceable as a reimbursement to *Typhoon!* for the costs *Typhoon!* incurred in hiring Employee.

**6.    Job Description.** The Employee agrees to perform the work desired by *Typhoon!* in a professional manner. A copy of Employee's job description is attached hereto as Exhibit B and

incorporated herein. *Typhoon!* is committed to assisting in creating a quality restaurant business and providing excellent customer service, and, in order to facilitate this goal, Employee must work cooperatively with other employees of *Typhoon!* and will act in the best interest of *Typhoon!*, even if doing so requires performing actions not specifically set forth in Employee's job description, provided that such activities are permitted by Employee's E-2 Visa.

7.     **Confidentiality.**  Employee agrees that she will not disclose the terms of this Agreement except as otherwise permitted herein or in writing by both parties hereto.  The Employee may have access to trade secrets, recipes, customer lists, supplier lists, sales materials and other confidential information owned by *Typhoon!*.  In consideration for obtaining access to such information, the Employee acknowledges that information such as *Typhoon!*'s trade secrets, recipes, customer lists, supplier lists, sales materials and information and other confidential information is proprietary information, whether or not protected or protectable under copyright, patent, trademark or any other law of the United States or any state.  The Employee covenants that she will not use such information or divulge such information to any other person without the prior, express written permission of *Typhoon!*, except to the extent that such use or disclosure is: (i) necessary to the performance of Employee's employment with *Typhoon!*; (ii) required by applicable law; or (iii) required by Employee's attorneys.   Upon termination Employee must return to *Typhoon!* all memoranda, notes and other documents in Employee's possession that relate to the confidential information of *Typhoon!*

8.     **Compensation.**  Compensation for work performed by Employee under this Agreement is set forth in Exhibit C, attached hereto and incorporated herein.

9.     **Assignability.**  This Agreement or the rights, responsibilities or obligations granted or assumed in this Agreement may not be assigned by Employee, in whole or in part, without first obtaining the written consent of *Typhoon!*.  This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs and legal representatives.

10.     **Notices.**  All notices required by this Agreement shall be made in writing, postage prepaid, certified mail, return receipt requested, or by facsimile transmission to the addresses or numbers first given above or by hand delivery.  Notice shall be deemed received two (2) days after the date of mailing or the day after it is faxed or hand delivered.

11.     **Collection and Attorneys' Fees.**  If an action, suit or legal proceeding is initiated or brought to enforce any or all of the provisions of this Agreement, the prevailing party shall be entitled to such attorneys' fees, costs and disbursements as are deemed reasonable and proper by an arbitrator or court.  In the event of an appeal of an initial decision of an arbitrator or court, the prevailing party shall be entitled to such attorneys' fees, costs and disbursements as are deemed reasonable and proper by the appellate court(s).  In the event a collection activity is instituted by *Typhoon!* in order to collect any obligations owed by Employee pursuant to this Agreement, *Typhoon!* shall be entitled to recover from Employee or its Guarantor such sum as it expends to recover such obligation, in addition to any other sums provided by law.

12.     **Venue.**  This Agreement shall be deemed executed in the State of Oregon and shall be interpreted and construed in accordance with the laws of the State of Oregon relating to contracts

made and performed therein. Venue shall be proper only in the County of Multnomah, State of Oregon.

**13.    Merger.** This Agreement constitutes the entire agreement between the parties (with the exception of the *Typhoon!* New Employee Noncompetition and Nonsolicitation Agreement which is not incorporated herein) and supersedes all prior agreements, understandings and proposals (whether written or oral) in respect to the matters specified.

**14.    Modification.** No alteration, modification, amendment, addition, deletion or change to this Agreement shall be effective or binding unless and until such alterations, modifications, amendments, additions, deletions or changes are properly executed in writing by both parties.

**15.    Headings.** All headings used in this Agreement are for reference purposes only and are not intended or deemed to limit or affect, in any way, the meaning or interpretation of any of the terms and provisions of this Agreement.

**16.    Rule of Construction.** It is expressly agreed by the parties to this Agreement that the rule of construction that a document should be more strictly interpreted against the person who drafted it shall not apply to any provision.

**17.    Waiver.** No waiver by either party of any breach or default hereunder shall be deemed a waiver of any repetition of such breach or default or in any way affect any of the other terms and conditions hereof.

**18.    Severability.** If any provision of this Agreement is judicially declared to be invalid, unenforceable or void by a court of competent jurisdiction, such decision shall not have the effect of invalidating or voiding the remainder of this Agreement, and the part or parts of this Agreement so held to be invalid, unenforceable or void shall be deemed to have been deleted from this Agreement, and the remainder of this Agreement shall have the same force and effect as if such part or parts had never been included.

**19.    Effective Date.** This Agreement is effective as of the date all parties hereto have executed this Agreement.

**20.    Representations and Warranties.** Each party hereto represents and warrants that it has the authority to enter into this Agreement and that this Agreement, when executed and delivered by the parties thereto, will constitute that party's legal, valid and binding obligation, enforceable in accordance with its terms, except as the enforceability thereof may be limited by the application of bankruptcy, insolvency or similar laws affecting the rights of creditors generally or judicial limits on the right of specific performance.

**21.    Survival.** The obligations under the following provisions will survive the termination or expiration of this Agreement: Section 1, Section 3, Section 5.4 and Section 7.

**22.    Counsel.** Employee agrees, recognizes and acknowledges that this Agreement was drafted by counsel for *Typhoon!* for *Typhoon!*'s benefit. Accordingly, Employee is not relying upon *Typhoon!*'s counsel for advice regarding the effect of this Agreement.

IN WITNESS WHEREOF, the parties hereto execute and date this Agreement.

*TYPHOON!, INC.*

By: _____     2/12/03
    Bo Kline,                                    DATE
    President

By: _____     2/12/03
    Stephen E. Kline                            DATE
    Secretary

**EMPLOYEE**

Signature: _SARINYA  REABROY_____     28 - 5 - 2003
Print Name:  Sarinya REABROY                        DATE
E-2 Visa No. _____

**ROYAL THAI CONSULATE-GENERAL**
**STATE OF OREGON**

By: _____     2/12/03
    Nicholas J. Stanley                         DATE

# EXHIBIT A

# GUARANTY

**THIS GUARANTY** is an exhibit to the Employment Agreement for Employees on E-2 Visas between **Sarinya REABROY** ("Employee") and *Typhoon!*, Inc., dated _____ (the "Employment Agreement").

The undersigned Guarantor unconditionally and irrevocably agrees to be responsible for all amounts which may become due to *Typhoon!* pursuant to this Employment Agreement, including but limited to Sections 1.5, 1.7 and 5.5.

Guarantor hereby waives (a) notice of acceptance of this Guaranty; (b) demand of payment, presentation and protest, or notices of any kind; (c) all right to assert or plead any statute of limitations as to or relating to this Guaranty or the underlying indebtedness; (d) any right to require *Typhoon!* to first proceed against Employee, or any other guarantor or any other person or entity liable to *Typhoon!*; and (e) any other right to require *Typhoon!* to proceed under any other remedy it may have before proceeding against Guarantor; and Guarantor hereby consents to any and all extensions of time, or renewals, granted by *Typhoon!* to Employee. *Typhoon!* shall not be deemed to have waived any rights under this Guaranty unless such waiver is in writing and signed by *Typhoon!*.

In the event suit or action is instituted to enforce collection or any of the terms of this contract, the prevailing party shall be entitled to recover from the other party such sum as the court deems reasonable as attorneys' fees at arbitration, on trial or on appeal, in addition to all other sums provided by law. This Guaranty is deemed a contract made in Oregon and it shall be construed and enforced according to the laws of the State of Oregon. Any suit or action instituted by either party to enforce the terms shall be brought in the courts in the State of Oregon. Venue is proper only in Multnomah County in Oregon.

**IN WITNESS WHEREOF**, the parties hereto execute and date this Agreement.

<u>CHUTIMON SRISUPAN</u>
(Guarantor, please print your name)

<u>ชุติมนต์ ศรีสุพรรณ</u>          <u>5/28/2003</u>
(signature)                              DATE

Address:
<u>32/59 PRADUDANG HOME KLONG SONG</u>          <u>02 996-2996</u>
<u>KLONGLUNG PRATUMTANI 12120</u>                (phone)

# Exhibit B
## Job Description
## Line Cook

1.      Food preparation:  Line Cook is responsible for the preparation of all sauces, recipes and dishes, including menu items and specials, at the direction and under the guidance of the Kitchen Manager and/or Executive Chef; Line Cook is also required to maintain and protect the confidentiality of all *Typhoon!* recipes.

2.      Training: Line Cook shall have the responsibility to assist the Kitchen Manager in training all prep cooks, assistant cooks and other support kitchen personnel in all procedures pertaining to proper food preparation according to their duties.

3.      Quality Control:  The Line Cook is responsible to help the Kitchen Manager and Executive Chef in monitoring quality control of the preparation, completion and presentation of all foods, dishes and sauces which are produced in the kitchen.

4.      Safety & Sanitation:  Line Cook has responsibility to assist the Kitchen Manager and Executive Chef in supervision, compliance and enforcement of all safety and sanitation procedures, in accordance with local, state and federal laws, to protect the health and safety of customers and staff.

5.      Food Storage:  Line Cook shall follow proper storage procedures and rotation of all groceries, fresh and frozen foods to ensure maximum freshness.

6.      Ordering: Line Cook will assist the Kitchen Manager and Executive Chef in ordering all groceries, fresh and frozen foods and restaurant supplies in a timely and efficient manner.  Line Cook will check or monitor inventories on a daily, weekly or as-needed basis, at the direction of the Kitchen Manager or Executive Chef.

# Exhibit C
## Compensation
## Line Cook

As compensation for the successful and conscientious fulfillment of duties, Line Cooks shall be compensated at a rate of $1400 to $1600 per month salary, based on a six-day week.

**Sarinya REABROY** shall be compensated at the rate of $1500 per month.

Line Cook shall also earn one (1) week of paid vacation after being in the employ of Typhoon! for one year, with vacation benefit accruing after a three-month probationary period.

Line Cook as an out-of-country hire from Thailand will also be compensated for visa application fees and air fare to and from America.

Line Cooks who are Thailand hires agree to accept remuneration according to the following formula:

$1500 per month, with $100 per month salary increase at the successful completion of one year's employment.

030599\00001\444684 V002

## *TYPHOON!* EMPLOYEE NONCOMPETITION AND
## NONSOLICITATION AGREEMENT

In consideration and as a condition of my employment by *Typhoon!*, I hereby agree for the benefit of *Typhoon!* as follows:

1. **Noncompetition**. I acknowledge that during the course of my employment with *Typhoon!*, I will receive proprietary information such as *Typhoon!'s* trade secrets, customer lists, customer information, key employee information, recipes, supplier lists, sales materials, business strategies and other information that is proprietary to *Typhoon!*. Therefore, during my employment by or service to *Typhoon!*, under the terms of any employment agreement, consulting agreement, independent contractor agreement, at-will employment, or otherwise, and for a period of one year after termination of my service to *Typhoon!* for any reason, I will not directly or indirectly own (as an asset or equity owner), or be employed by or consult for, any business in competition with *Typhoon!*. The geographic scope of this noncompete is limited to the geographic areas in which *Typhoon!* conducts its businesses.

2. **Nonsolicitation**. During my employment by or service to *Typhoon!*, under the terms of any employment agreement, consulting agreement, independent contractor agreement or otherwise, and for a period of one year after termination of my employment with *Typhoon!* for any reason, I will not, directly or indirectly solicit for myself or any such competing company or business organization, any employee of *Typhoon!*.

3. **Extension of Time**. I agree that both the noncompetition and the nonsolicitation covenants described in Sections 1 and 2 above will be extended by a time period equal to any time during which I engaged in any activities violating either or both of those covenants.

4. **Miscellaneous.**

(a) I agree that my breach of any provision of this Agreement will cause irreparable damage to *Typhoon!* and that in the event of such breach *Typhoon!* will have, in addition to any and all remedies of law, the right to an injunction, specific performance or other equitable relief to prevent the violation of my obligations under this Agreement.

(b) I understand that no part of this Agreement creates an obligation on *Typhoon!* or any other person or entity to continue my employment. I agree that the provisions of this agreement, including the noncompetition and nonsolicitation provisions, are enforceable regardless of who terminates my employment and regardless of why my employment is terminated.

(c) I represent that my performance of all of the terms of this Agreement and as an employee of *Typhoon!* does not and will not breach any agreement to keep in confidence proprietary information that I acquire in confidence or in trust prior to my

employment by *Typhoon!*. I have not entered into, and I will not enter into, any agreement either written or oral that conflicts with this Agreement.

(d)    Any waiver by *Typhoon!* of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach of such provision or any other provision of this Agreement.

(e)    My obligations under this Agreement will survive the termination of my employment regardless of the manner of such termination, and will be binding upon my heirs, executors, administrators and legal representatives.

(f)    *Typhoon!* will have the right to assign this Agreement to its successors and assigns, and all covenants and agreements under this Agreement will inure to the benefit of and be enforceable by such successors or assigns.

(g)    It is the intent and understanding of the parties that if, in any action before any court or agency legally empowered to enforce or declare invalid any provision of this Agreement, any term, restriction, covenant or promise is found to be unreasonable or otherwise unenforceable, then such term, restriction, covenant or promise shall be deemed modified to the extent necessary to make it enforceable by such court or agency.    The invalidity or unenforceability of any provision of this Agreement shall in no way affect the validity or enforceability of any other provision of this Agreement.

(h)    This Agreement will be governed by, and construed in accordance with, the laws of the state of Oregon without reference to such state's choice of law rules. I hereby irrevocably submit to the jurisdiction of any state or federal court located in Oregon, in any action or proceeding brought to enforce or otherwise arising out of or relating to this Agreement, and I hereby waive (i) any objection to venue in any such court and (ii) any claim that such forum is an inconvenient forum. I further agree that I will not bring any action related in any way to this Agreement in any jurisdiction other than a state or federal court located in Oregon.

IN WITNESS WHEREOF, I have executed this Agreement as of the 28 day of May , 2003 .

*SARINYA REABROY*

Sarinya REABROY

030599\00001\445011 V001