Amy R. Alpern, OSB No. 840244
aalpern@littler.com
Neil N. Olsen, OSB No. 053378
nolsen@littler.com
LITTLER MENDELSON, P.C.
1750 SW Harbor Way
Suite 450
Portland, OR  97201
Telephone:  503.221.0309
Facsimile:  503.242.2457

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

| | |
|---|---|
| SARINYA REABROY,<br><br>           Plaintiff,<br><br>     vs.<br><br>*TYPHOON!*, INC., STEVE KLINE and<br>BO KLINE,<br><br>           Defendants. | CV 08-1178-HA<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY ACTION PENDING ARBITRATION**<br><br>**(ORAL ARGUMENT REQUESTED)** |

## I.  INTRODUCTION

Defendants *Typhoon!, Inc.,* Steve Kline, and Bo Kline seek dismissal of this action and

an order compelling Plaintiff Sarinya Reabroy to arbitrate her claims against *Typhoon!* and the

Klines in accordance with the 2006 Employment Agreement she entered into with *Typhoon!*.

Though Ms. Reabroy's Complaint only brings to the Court's attention the 2003 Employment

Agreement she signed, Ms. Reabroy subsequently turned down opportunities to return to

Thailand on airline tickets paid for by *Typhoon!* and voluntarily renewed her Employment

Page 1 – MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY
ACTION PENDING ARBITRATION

Agreement with *Typhoon!* in 2005 and again in 2006. Both the 2005 and 2006 Agreements contain the arbitration clause that is the subject of this Motion.

In her Complaint, Ms. Reabroy asserts claims for human trafficking, involuntary servitude, national origin discrimination, workers' compensation discrimination, sexual harassment, retaliation, aiding and abetting, intentional infliction of emotional distress, and wage and hour violations. Despite each of Ms. Reabroy's claims falling within the wide scope of her arbitration agreement with *Typhoon!*, she has initiated an action in this Court and refused demands by *Typhoon!* and its corporate officers, the Klines, to submit her claims to arbitration. Accordingly, this Court should compel Ms. Reabroy to submit her claims to arbitration pursuant to the arbitration agreement, the Federal Arbitration Act ("FAA"), and Oregon law, and dismiss this action in its entirety, or, in the alternative, stay it pending arbitration.

This Memorandum is supported by the accompanying Declarations of Stephen E. Kline ("Kline Decl.") and Chanukrit "Oat" Thienkalaya ("Thienkalaya Decl.").

## II.  FACTS

Steve and Bo Kline founded *Typhoon!* in 1995. Kline Decl. ¶ 2. From a small Thai restaurant on NW Everett in Portland, *Typhoon!* has gradually added locations throughout the Northwest, and now operates seven restaurants. Id. Bo Kline is the President of *Typhoon!* and its Executive Chef. Id. Steve Kline serves as the corporate Secretary, Treasurer, and Managing Director. Id. Along with *Typhoon!*'s Chief Operating Officer, he handles the day-to-day business of the company. Id.

In early 2003, *Typhoon!* employee Parakorn "Tui" Tonruong, who purported to be Ms. Reabroy's husband and former co-worker at a hotel in Thailand, urged *Typhoon!* to hire Ms. Reabroy as a cook. Id. ¶ 3. Upon the employee's recommendation, *Typhoon!* had

**Littler Mendelson, PC**
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Telephone 503.221.0309
Facsimile 503.242.2457

discussions with Ms. Reabroy, who was living in Thailand, about helping her secure entry into the United States and working for the company.  Id.  *Typhoon!* and Ms. Reabroy soon reached a tentative agreement, and in order to comply with the laws and regulations of Thailand and the United States, as well as good business practices, id. ¶ 4, *Typhoon!* and Ms. Reabroy executed a formal Employment Agreement acknowledged by Royal Thai Consulate-General for the State of Oregon.  Id. ¶ 4, Ex. 1 at 6.  Upon obtaining a Visa to work for *Typhoon!* in the United States, Ms. Reabroy commenced work as a cook at *Typhoon!*'s NW Everett location on or about June 28, 2003, and moved in with the employee who recommended her for hire.  Id. ¶ 5.

   After working for *Typhoon!* for nearly two years and turning down an opportunity to return to Thailand on an airline ticket paid for by *Typhoon!*,[1] Ms. Reabroy voluntarily decided to renew her Employment Agreement with *Typhoon!*.  Id. ¶ 6.  She executed the renewal Agreement on April 1, 2005.  Id., Ex. 2 at 9.[2]  Again, it was acknowledged by the Royal Thai Consulate-General.  Id., Ex. 2 at 9.

   In addition, this Agreement was presented to her by Chanukrit "Oat" Thienkalaya, a *Typhoon!* Manager and "E-2 Coordinator," who served as the human resources liaison to employees from Thailand who were in the United States on E-2 Visas.  Thienkalaya Decl. ¶¶ 4, 8–9.  Mr. Thienkalaya is a native Thai speaker who is fluent in English and holds an M.B.A. from Oregon State University.  Id. ¶¶ 2–3.  Mr. Thienkalaya discussed the terms of renewal Agreements, was available to answer any questions Ms. Reabroy had, and was available to translate the terms of the Agreement.  Id. ¶¶ 5–9.  After reviewing the Agreement and taking

---

[1] An opportunity set forth in paragraph 2 of her initial Employment Agreement with *Typhoon!*.  See Kline Decl., Ex 1 at 2.

[2] Ms. Reabroy soon thereafter, on May 1, 2005, signed an amended agreement, for reasons not relevant to this discussion.  See Kline Decl., Ex. 3 at 9.  The arbitration clause and the other clauses discussed herein remained the same.  See id., Ex. 3, at 7–8.

**Littler Mendelson, PC**
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Telephone 503.221.0309
Facsimile 503.242.2457

whatever steps she deemed reasonable, Ms. Reabroy signed it and returned it to Mr. Thienkalaya.

Id. ¶ 9.  The arbitration clause in this Agreement (which is identical to the arbitration clause set forth in the subsequent 2006 Agreement) reads as follows:

> The parties hereto hereby agree to submit any claim or dispute arising out of or relating to the terms of this Agreement to binding arbitration in Portland, Oregon, by a mutually selected, neutral arbitrator from the United States Arbitration and Mediation; provided, however, that *Typhoon!* is not precluded from seeking injunctive relief in a court of competent jurisdiction for Employee's alleged violation of Section 7 above [Confidentiality and Non-Disclosure]; and further provided that parties shall have any right to discovery as would be permitted by the Federal Rules of Civil Procedure for a period of ninety (90) days following commencement of such arbitration, and the arbitrator thereof shall resolve any dispute which arises in connection with such discovery.  In rendering a decision, the arbitrator shall have no authority to modify, delete or change any provision of this Agreement, and judgment upon the award rendered therein may be entered in any court having jurisdiction.

Kline Decl., Ex. 2 at 7 (bracket added).

The 2005 and 2006 Agreements contain another clause relevant to the instant issue.

Under the heading "Counsel," the Agreement provides that

> Employee agrees, recognizes and acknowledges that this Agreement was drafted by counsel for *Typhoon!* for *Typhoon!*'s benefit.  Employee acknowledges that s/he has been advised to have this Agreement reviewed by his/her own independent counsel, to have this Agreement explained to him/her by that independent counsel and, if appropriate, to have this Agreement translated into whatever language Employee deems appropriate for complete understanding of this Agreement.

Id., Ex. 2 at 8, Ex. 4 at 8.

In 2006, after rejecting another opportunity to return to Thailand on a airline ticket provided by *Typhoon!* (unlike her "husband" who had since returned to Thailand), Ms. Reabroy again voluntarily decided to renew her Employment Agreement.  Id. ¶ 7.  On March 28, 2006, Ms. Reabroy executed her second renewal Employment Agreement with *Typhoon!*.  Id., Ex. 4

at 9.  Like the 2005 Agreement, this Agreement contains the arbitration and counsel provisions.[3]
Id., Ex. 4 at 7–8.  Furthermore, like in 2005, Mr. Thienkalaya presented Ms. Reabroy with the
Agreement and made himself available to answer any questions Ms. Reabroy had and to provide
translation of the Agreement.  Thienkalaya Decl. ¶¶ 5, 10.  After taking the Agreement for
review, Ms. Reabroy signed it and returned it to Mr. Thienkalaya.  Id. ¶ 10.  Finally, like the
2003 and 2005 Agreements, the 2006 Agreement was acknowledged by the Royal Thai
Consulate-General.  See id., Ex. 4 at 9.  In addition, Ms. Reabroy was given a signed copy of
each of the Agreements for her own records.  Id., ¶¶ 9–10.

On or about October 8, 2008, Ms. Reabroy filed the subject action against *Typhoon!* and
the Klines.  On October 23, 2008, after conferring with Ms. Reabroy's attorneys by phone the
previous day, attorneys for *Typhoon!* and the Klines provided written notice to Ms. Reabroy's
attorneys that she was obligated to arbitrate her claims against *Typhoon!* and the Klines.  To date,
Ms. Reabroy has refused to submit her claims to arbitration, leaving *Typhoon!* and the Klines
with no alternative but to file this Motion.

## III.  ARGUMENT

This Court should grant Defendants' Motion to Compel to Arbitration because a valid
agreement to arbitrate exists that covers the claims at issue.  Ms. Reabroy voluntary manifested
her understanding of and assent to the terms of the Employment Agreement, including its
arbitration clause, and her claims plainly arise out of or relate to the terms of the Agreement.

---

[3] Furthermore, the 2006 Employment Agreement like the Agreements before it contains an integration clause
which provides as follows:

> "**Complete Agreement.**  This Agreement and the Noncompetition and Nonsolicitation
> Agreement signed by Employee upon commencement of employment with *Typhoon!*
> constitute the entire agreement between the parties on the subjects herein and supersede all
> prior agreements, understandings and proposals (whether written or oral) with regard to
> Employee's employment with *Typhoon!*.

Kline Decl., Ex. 4 at 8.

**Littler Mendelson, PC**
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Telephone 503.221.0309
Facsimile 503.242.2457

As a preliminary matter, "[a]rbitration agreements in employment contracts are plainly enforceable and are covered by the FAA."  Simpson v. Lifestyles, LLC, 2008 WL 1882838, at *3 (D. Or. April 4, 2008) (citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001)). "Moreover, 'statutory claims may be the subject of an arbitration agreement.'"  Id. (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991)).  As further noted by the Court in Gilmer, "[s]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to service both its remedial and deterrent function."  500 U.S. at 28 (citation omitted).

After dispensing with the preliminary questions, "[e]valuating a motion to compel arbitration requires a court to determine: '(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue.'"  Simpson, 2008 WL 1882838, at *2 (quoting Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000)).  "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms."  Id.  Furthermore, "[i]t is well-settled that where a contract contains an arbitration clause, there is a 'presumption of arbitrability.'"  Id. (quoting Comedy Club, Inc. v. Improv West Assoc., 514 F.3d 833, 842 (9th Cir. 2007)[4]) (further citation omitted).  Accordingly, "[a] request for an order compelling arbitration 'should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute' and any doubts 'should be resolved in favor of coverage.'"  Id.; see also Snow Mountain Pine v. Tecton Laminates Corp., 126 Or. App. 523, 529, 869 P.2d 369, rev. denied, 319 Or. 36, 876 P.2d 782 (1994).

---

[4] Which as since been vacated on other grounds.  See Improv West Assocs. v. Comedy Club, Inc., __ S. Ct. __, 2008 WL 1826049 (Oct. 6, 2008).

**Littler Mendelson, PC**
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Telephone 503.221.0309
Facsimile 503.242.2457

**A.    Ms. Reabroy and *Typhoon!* entered into a valid agreement to arbitrate.**

Under the FAA, arbitration agreements are subject to all defenses to enforcement that apply to contracts generally. See 9 U.S.C. § 2. To evaluate the validity of an agreement to arbitrate, courts "should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

Under Oregon law,[5] assuming the agreement meets the other basic tests of contract formation, arbitration agreements are enforceable unless the obligations are so unbalanced so as to have an unconscionable effect on the employee. Motsinger v. Lithia Rose-FT, Inc., 211 Or. App. 610, 625, 156 P.3d 156 (2007). Unconscionability is determined based on the facts as they existed at the time the contract was formed, Best v. U.S. Nat'l Bank, 303 Or. 557, 560, 739 P.2d 554 (1987), and the party asserting unconscionability bears the burden of demonstrating that the arbitration clause is unconscionable, Sprague v. Quality Rests. Northwest, 213 Or. App 521, 525, 162 P.3d 331 (2007).

"Oregon courts consider both procedural unconscionability (contract formation) and substantive unconscionability (contract terms)." Derrick v. Santa Fe Natural Tobacco Co., 2007 WL 2994598, at *3 (D. Or. Oct. 12, 2007). "'The primary focus . . . appears to be relatively clear:  substantial disparity in bargaining power, combined with terms that are unreasonably favorable to the party with the greater power may result in a contract or contract provision being unconscionable.'" Id. (quoting Vasquez-Lopez v. Beneficial Oregon, Inc., 210 Or. App. 553, 567, 152 P.3d 940 (2007)) (other citations omitted). While procedural and substantive unconscionability are relevant to the inquiry, it is "only substantive unconscionability that that is absolutely necessary." Sprague, 123 Or. App. at 525–26, 162 P.3d 331.

---

[5] Oregon law governs on state law questions pursuant to the Employment Agreement. See Kline Decl., Ex. 4 at 7.

**Littler Mendelson, PC**
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Telephone 503.221.0309
Facsimile 503.242.2457

"Procedural unconscionability is not demonstrated merely because an employee did not negotiate any of the language in an employment agreement; unequal bargaining power, by itself, is insufficient to establish that an agreement is unconscionable." Derrick, 2007 WL 2994598, at *3 (citations omitted). The establishment of procedural unconscionability usually requires an finding of deception, compulsion, or lack of genuine consent. See Sprague, 213 Or. App. at 525, 162 P.3d 331; Motsinger, 211 Or. App. at 615, 156 P.3d 156.

To prove substantive unconscionability, the party opposing the arbitration agreement must demonstrate that the effect of the arbitration clause is so one-sided or unreasonable as to undermine substantive fairness. See Sprague, 213 Or. App. at 525, 162 P.3d 331; Motsinger, 211 Or. App. at 626, 156 P.3d 156. In sum, it is only "[i]n those rare instances in which our courts have declared contractual provisions unconscionable"; instances in which "there existed 'serious procedural and substantive unfairness.'" Motsinger, 211 Or. App. at 627, 156 P.3d 156 (citing, inter alia, Vasquez-Lopez, 210 Or. App. at 576, 152 P.3d 940) (emphasis added).

Here, there is no indicia of procedural or substantive unconscionability. Ms. Reabroy signed a form of the Employment Agreement containing the arbitration clause three times. Each time she was given ample opportunity to review the agreement, ask questions regarding its content, seek interpretation of any terms she did not understand, and seek counsel regarding its terms.[6] Furthermore, the arbitration clause to which she agreed is even-handed to the parties and

---

[6] Based on Ms. Reabroy's Complaint and conferral between counsel, Ms. Reabroy will likely contend that because she is not a native English speaker and the Agreement to which she manifested her consent was in English, she should not be held to its terms. Other than ignoring the safeguards *Typhoon!* implemented, that she repeatedly signed the Agreements without objection and had ample opportunities to seek independent counsel and assistance, including translation, only underscores the fact that her argument fails legally on its own accord. See Morales v. Sun Contractors, Inc., 541 F.3d 218, 222–23 (3d Cir. 2008) (rejecting a Spanish-speaking employee's attempt to escape operation of an arbitration clause because it was written in English; noting that "[i]n the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable"; further noting that "[i]t was [the employee's]

Page 8 – MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY
ACTION PENDING ARBITRATION

ensures the fair adjudication of claims.  In sum, this is not one of the "rare instances"; the arbitration clause is enforceable.

**B.    The arbitration agreement covers Ms. Reabody's claims.**

The broad scope and unambiguous language of the arbitration clause encompass Ms. Reabroy's claims against *Typhoon!* and the Klines.  Ms. Reabroy agreed to "submit any claim or dispute arising our of or relating to the terms of this Agreement to binding arbitration." Kline Decl., Ex. 4 at 7.   The arbitration clause's "arising out of or relating to" language has the broadest possible scope under both Oregon and federal law.  See, e.g., Union County Sch. Dist. No. 1 v. Valley Inland Pac. Constructors, Inc., 59 Or. App. 602, 608, 652 P.2d 349 (1982) ("arising out of or relating to" arbitration clause was "general and all-encompassing"); Britton v. Co-op Banking Group, 4 F.3d 74, 745 (9th Cir. 1993) ("arising out or relating to" clause was "broad on its face, and in fact, it is routinely used in many securities and labor agreements to secure the broadest possible coverage").  Each of her claims is employment-related and, thus, falls within the broad "arising out of or relating to" of the arbitration clause.

**C.    The arbitration agreement covers the claim against the Klines and the Klines, as officers and agents of *Typhoon!*, can enforce the arbitration agreement with Ms. Reabroy.**

"The Ninth Circuit has held that, pursuant to the strong federal policy favoring arbitration, 'nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles.'"  Prograph Intern. Inc. v. Barhydt, 928 F. Supp. 983, 990 (N.D. Cal. 1996) (quoting Letizia v. Prudential Bache Securities, Inc., 802 F.2d 1185, 1187 (9th Cir. 1986)) (other citations omitted).  "Other courts have also held that a nonsignatory

---

obligation to ensure he understood the Agreement before signing it") (citations omitted); see also Motsinger, 211 Or. App. at 616–17, 156 P.3d 156 ("A party is presumed to be familiar with the contents of any document that bears the person's signature.") (citations omitted).

**Littler Mendelson, PC**
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Telephone 503.221.0309
Facsimile 503.242.2457

officer, agent or representative of one of the parties to an arbitration agreement may compel the other party to arbitrate claims against him or her arising from or in connection with that agreement." Id. (citing <u>Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 7 F.3d 1110, 1121–22 (3d Cir. 1993) for the proposition that "[b]ecause a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements.").

In this case, the claim against the Klines is for allegedly "participating in and assisting ongoing discrimination and retaliation against plaintiff based on her opposition to unlawful employment practices." <u>See</u> Complaint ¶ 45. This claim plainly arises out of or relates to the terms of the subject Employment Agreement, and the Klines are indisputably officers and agents of *Typhoon!*. In fact, they both signed the operative Agreement as corporate officers. <u>See</u> Kline Decl., Ex. 4 at 9. Thus, the claim against them should be arbitrated with the claims against *Typhoon!*

**D.    The Court should dismiss this action.**

"In cases in which a court decides that an arbitration agreement is valid and enforceable, the court may either stay or dismiss the action." <u>Derrick</u>, 2007 WL 2994598, at *6 (citing <u>Nagrampa v. Nailcoups, Inc.</u>, 469 F.3d 1257, 1276 (9th Cir. 2006)). "Dismissal is proper under Section 3 of [the] FAA 'when all of the issues presented in the lawsuit are arbitrable.'" <u>Id.</u> (citing <u>Choice Hotels Intl., Inc. v. BSR Tropicana Resort, Inc.</u>, 252 F.3d 707, 709–10 (4th Cir. 2001)). Ms. Reabroy's claims are covered completely by the arbitration clause and dismissal is proper.

/ / /

/ / /

Page 10 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY ACTION PENDING ARBITRATION

**Littler Mendelson, PC**
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Telephone 503.221.0309
Facsimile 503.242.2457

## IV.  CONCLUSION

Based on the foregoing, *Typhoon!* and the Klines respectfully request that this Court

grant their Motion in its entirety, and enter an order (1) compelling Ms. Reabroy to arbitrate her

claims in accordance with the Employment Agreement; and (2) dismissing this action, or, in the

alternative, staying it pending arbitration.


Dated:  October 28, 2008

                                            Respectfully submitted,

                                            LITTLER MENDELSON, P.C.



                                             /s/ Amy R. Alpern
                                            Amy R. Alpern, OSB No. 840244
                                            aalpern@littler.com
                                            Neil N. Olsen, OSB No. 053378
                                            nolsen@littler.com

                                            Attorneys for Defendants


Page 11 – MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY
ACTION PENDING ARBITRATION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 28, 2008, I served a full, true and correct copy of

the foregoing MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO

COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION PENDING

ARBITRATION, via the Court's CM/ECF system, on:

> Beth Creighton
> Steenson, Schumann, Tewksbury
>  Creighton & Rose, P.C.
> 500 Yamhill Plaza Building
> 815 SW Second Avenue
> Portland, OR  97204

> Of Attorneys for Plaintiff

By  /s/ Amy R. Alpern
        Amy R. Alpern

Firmwide:87114352.1 061118.1001