Beth Creighton    OSB #97244
E-mail: *beth@sstcr.com*
J. Ashlee Albies   OSB #05185
E-mail: *ashlee@sstcr.com*
STEENSON, SCHUMANN, TEWKSBURY,
CREIGHTON & ROSE, P.C.
500 Yamhill Plaza Building
815 S.W. Second Avenue
Portland, Oregon  97204
Phone:  (503) 221-1792
Fax:      (503) 223-1516

Of Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SARINYA REABROY, | Case No. CV 08-1178-HA |
| Plaintiff, | **MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION** |
| vs. | |
| *TYPHOON!*, INC., STEVE KLINE and BO KLINE, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

## I.  INTRODUCTION

Plaintiff Sarinya Reabroy ("Reabroy") responds and opposes defendants' motion to compel arbitration on grounds the arbitration provision defendants seek to enforce against plaintiff is unenforceable as a matter of law.   Plaintiff relies herein on the following legal authority, on the accompanying Declaration of Beth Creighton and its attachments, including evidence obtained from the limited discovery the court allowed to take place in aid of attacking the instant motion.  For all the reasons that follow, defendants' motion should be denied.

///

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N   and
R O S E ,      P C
815 S.W. 2nd Ave. #500
Portland, Or.  97204
Tel:   (503) 221-1792

## II.  CLAIMS FOR RELIEF

Plaintiff filed claims against defendants for violation of 18 USC 1595 and ORS 30.867 - human trafficking laws, 42 USC 1981, Title VII, ORS 659A.030; ORS 659A.109 - anti discrimination and anti-retaliation laws, 29 USC 207 and ORS 653.261 - wage and hour laws, and for the common law claim of intentional infliction of emotional distress.   In plaintiff's eight claims against the defendants, plaintiff seeks damages and equitable relief as appropriate.

Defendants filed a motion to compel arbitration, which has been stayed to allow discovery on the "drafting, formation and distribution of any arbitration agreements."

## III.  FACTS

Defendant *Typhoon!* Inc. ("*Typhoon!*") currently operates seven restaurants in the Pacific Northwest.  Decl. of Stephen E. Kline in Supp of Def's Motion to Compel Arbitration, ¶1.  In tax year 2000 (ending 11/30/01), *Typhoon!* had gross receipts of nearly $5.8 million.  Pl's Exh 1. Defendant Stephen E. Kline ("Mr. Kline") owns 44% of Typhoon!  Pl's Exh 2 (S. Kline dep, p 6.) He is Secretary-treasurer and managing director and approves all contracts for the Thai nationals who work for Typhoon! and are in the United States on E-2 visas.  Id. p 5-7, 12-13.  Defendant Bo Kline ("Mrs. Kline") owns 51% of Typhoon!  Pl's Exh 3 (Bo Kline dep, pp 5-6.)  Although her first language is Thai, she never spoke to Reabroy about the arbitration provision of the contract.  Id p 10.  In fact, Mrs. Kline never even read the contracts in detail, did not have any idea of the rights given up by a party agreeing to arbitration, did not know what it would cost to go to arbitration, and does not understand what arbitration is.  Id pp 4, 8-10, 14.  In Mrs. Kline's understanding, arbitration would help Typhoon! resolve problems faster and the employees would benefit as much as Typhoon! does - coming to "a mutual agreement without involving attorneys or judge or the system that is costly." Id pp 9-10.

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N    a n d
R O S E ,        P  C
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel:  (503) 221-1792

In 2003, Mr. Kline signed an Employment Agreement for Employees on E-2 Visas regarding the employment of Sarinya Reabroy.  S. Kline dep, p 10.  Prior to the execution of this contract, Mr. Kline did not indicate to Reabroy how disputes between Typhoon! and Reabroy would be resolved. Id. at 11.

In 2005, Typhoon! made changes to the standard Employment Agreement for Employees on E-2 Visas and an arbitration clause was included that stated:

"**15.    Arbitration.**   The parties hereto hereby agree to submit any claim or dispute arising out of or relating to the terms of this Agreement to binding arbitration in Portland, Oregon, by a mutually selected, neutral arbitrator from the United States Arbitration and Mediation; provided, however, that *Typhoon!* is not precluded from seeking injunctive relief in a court of competent jurisdiction for Employees' alleged violation of Section 7 above; and further provided that parties shall have any right to discovery as would be permitted by the Federal Rules of Civil Procedure for a period of ninety (90) day following the commencement of such arbitration, and the arbitrator thereof shall resolve any dispute which arises in connection with such discovery.  In rendering a decision, the arbitrator shall have no authority to modify, delete or change any provision of this agreement, and judgment upon the award rendered therein may be entered in any court having jurisdiction."

Id. p 11, Pl's Exh 5. When Mr. Kline approved the arbitration clause, he did not know the mechanics of how it would work.  S. Kline dep, p 12-13.  He did not know who would pay for the arbitration.  Id p 13.  He did not know the rules that would govern the arbitration.  Id p 15. He did not know what rights a party gives up when the party agrees to arbitration.  Id. p 36.  In fact, he never even looked at the rules under the United States Arbitration and Mediation Services.  Id. pp 15-16.

The 2005 version of the contract that first included the arbitration provision was non-negotiable.  Id pp 16-17, 19-20, 35.  The Thai nationals working for Typhoon! had no ability to negotiate the arbitration provision.  Id p 26.  A Thai national would no longer be allowed to work for Typhoon! if she did not sign the contract with the arbitration provision and would be required

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N   a n d
R O S E ,      P C
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel:  (503) 221-1792

to go back to Thailand.  Id pp 37-39. Mr. Kline drafted an explanation of the changes in the 2005

contract representing that the goal in utilizing arbitration was to "resolve a problem with fairness,

speed and efficiency and without the need to become involved in a lengthy and expensive legal

matter."  Id p 31, Pl's Exh 6.  Mr. Kline asked Chanukrit "Oat" Thienkalaya, Typhoon!'s E-2

coordinator, to translate this explanation in to Thai and discuss it with the Thai speaking staff.  Id

pp 31-32; Pl's Exh 4 (Thienkalaya dep., p 40.) Nowhere did this explanation indicate that the

expense to the Typhoon! employee would be approximately 1000 times that of having the dispute

resolved in state or federal court.  Pl's Exh 6.  Thienkalaya never asked about the arbitration

provision or how it would work.  S. Kline dep pp 33-34.  It was Thienkalaya's job to explain the

2005 contract to the Thai speaking employees.  Bo Kline Depo p 11.  Mrs. Kline would have

referred any questions about the contract to Thienkalaya.  Id p 13.  Thienkalaya is a native Thai

speaker who was the E-2 visa coordinator for Typhoon!  Thienkalaya speaks English.

Thienkalaya dep pp 9, 12.  Thienkalaya understands the following "the arbitration is the process

where we negotiate outside of court without the jury and an attorney involved.  It could be the

third person who has the fairness and neutral to both parties to come up with the win-win

solution or the result that makes both parties happy."  Id p 15.  Theinkalaya agrees that the

paragraph containing the arbitration provision is a technical section that is sophisticated and

contains a lot of jargon.  Id pp 21-22, 24-26.  However, Theinkalaya did not understand what the

rules for arbitration were or what it would cost an employee, if she was to arbitrate a dispute.  Id

p 28.  Hence Thienkalaya had no ability to answer questions about the rules or costs even if an

employee would have asked about it.

Reabroy was paid $8.00 per hour for 40 hours a week and $12.00 per hour for another 10

hours per week under the terms of the 2005 contract.  S. Kline depo p 27, Pl's Exh 5. Mr. Kline

STEENSON
SCHUMANN
TEWKSBURY
CREIGHTON and
ROSE,    PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

never spoke to Reabroy about the 2005 contract, nor did he know what Reabroy understood

about the arbitration agreement.  Id pp 30-31, 39.

### IV.  ARGUMENT IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

### ARBITRATION

**A.**    **Legal Standards for Enforcing or Invalidating Employer-Drafted, Mandatory Arbitration Agreements.**

The Federal Arbitration Act of 1925, 9 USC §1 et seq. (FAA), was enacted to remedy

judicial hostility toward private arbitration.  *Allied-Bruce Terminix Cos. v. Dobson*, 513 US 265

(1995).  The FAA provides:

> "A written provision in...a contract involving interstate commerce to settle by arbitration a arbitration an existing controversy arising out of a such a contract...shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 USC §2.  Oregon's arbitration law parallels the federal law, but adds the requirement that

arbitrations be held "within the State of Oregon."  ORS 36.305.  Likewise, both federal and state

law allow a party seeking to enforce an arbitration agreement to file a motion in federal district

court or in state court for an order compelling arbitration of the matter, and to dismiss or abate

the action.

In 2001, the Supreme Court expressly held that all contracts of employment involving

interstate commerce, except those of transportation workers, are covered by the FAA.  *Circuit

City v. Adams*, 532 US 105 (2001).   Courts look to the specific terms of the arbitration

agreement itself to see if  "such grounds...exist at law or in equity for the revocation of any

contract."  9 USC § 2; ORS 36.305.

In determining whether an arbitration agreement is enforceable, courts look to the

common law of the forum state governing the formation of contracts. *Circuit City Stores, Inc. v.

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N  a n d
R O S E ,    P C
815 S.W. 2nd Ave. #500
Portland, Or.  97204
Tel:  (503)  221-1792

*Adams*, 279 F3d 889, *cert denied,* 153 L Ed 2d 160 (2002)(*Circuit City II*); *Ticknor v. Choice Hotels International, Inc.*, 265 F3d 931 (9th Cir 2001), *cert denied*, 151 L Ed 2d 977 (2002)(FAA's enforceability provision does not preempt attacks on arbitration agreement based on contract law of forum state).

An unconscionability challenge to an arbitration provision alone and not to the entire employment contract at issue, is to be decided by the court and not the arbitrator. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006); *Vasquez-Lopez, supra*, 210 Or App at 563 (2007). Oregon law looks to the circumstances existing at the time of contract formation, in determining whether a contract may be found to be unconscionable. *WL May Co. v. Philco-Ford Corp.*, 273 Or 701, 543 P 2d 283 (1975). While procedural and substantive unconscionability are both relevant, only substantive unconscionability is absolutely necessary. *Vasquez-Lopez*, 210 Or App at 566-67. Courts decide the question of unconscionability on a case by case basis, examining each case's "unique facts." *Id.*

Under Oregon law, "[t]he primary focus [of the unconscionability analysis is] substantial disparity in bargaining power combined with terms that are unreasonably favorable to the party with the greater power may result in a contract or contractual provision being unconscionable." *Carey v. Lincoln Loan Co.*, 203 Or App 399, 422-423, 125 P3d 814 (2005), *aff'd* 342 Or 530, 157 P3d 775 (2007). A contract whose terms were imposed by a party of superior bargaining power, with no ability to negotiate the terms, constitutes a contract of adhesion, and thus is potentially unconscionable. *Collins v. Farmers Ins. Co of Oregon*, 312 Or 337, 362, 822 P 2d 1146 (1991). [1] [2] Although an arbitration agreement presented on such a take-it-or-leave-it basis

---

[1] According the Restatement (2nd) of Contracts at §208, comment a:

STEENSON
SCHUMANN
TEWKSBURY
CREIGHTON and
ROSE, PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

will not automatically be unenforceable under Oregon law, the adhesive nature of the contract, coupled with "terms that are unreasonably favorable to the party with the greater power may result in a contract or contract provision being unconscionable." *Carey, supra.* at 422.

By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum. *Circuit City v. Adams, supra,* 532 US at 123.  Thus, it has been held that requiring an employee to bear expenses associated with private arbitration that are beyond the usual costs associated with bringing an action in court, may also be unconscionable. *See, Ferguson, supra*, 298 F3d at 785.  It has also been held in this circuit that a fee allocation scheme which requires the employee to split the arbitrator's fees with the employer would *alone* render an arbitration agreement substantively unconscionable. *Circuit City II*, 279 F3d at 894 (emphasis added).

Despite the favor toward enforcing agreements to arbitrate legal disputes, numerous courts within this circuit, in Oregon, and in California, considering arbitration agreements similar to the instant one, have denied motions to compel arbitration on grounds the mandatory arbitration agreements at issue are unenforceable due to unconscionable terms that pervade the entire agreement. *See, e.g., Ferguson v. Countrywide Credit Industries, Inc.*, 298 F3d 778, 787 (9th Cir 2002)(invalidating mandatory arbitration provision in employment contract)*; LeLouis v.*

---

"The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose and effect. Relevant factors include weaknesses in the contracting process like those involved in more specific rules as to contractual capacity, fraud, and other invalidating causes; the policy also overlaps with rules which render particular bargains or terms unenforceable on grounds of public policy."

[2] Defendants are clearly in a superior bargaining position to plaintiff and it is undisputed that they presented her with a take it or leave it arbitration provision in her contract.  See Creighton Decl Exs 1-2.

STEENSON
SCHUMANN
TEWKSBURY
CREIGHTON and
ROSE, PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

*Western Directory Co.*, 230 F. Supp 2d 1214 (D Or 2001)(same); *Miller v. Aqua Glass, Inc.,* 2008

US Dist LEXIS 55228 (D Or 2008)(same); *Armendariz v. Foundation Health Psychcare*

*Services, Inc.*, 24 Cal 4th 83, 99 Cal Rptr 745, 6 P3d 669 (2000); *Vasquez-Lopez v. Beneficial*

*Oregon, Inc.*, 210 Or App 553, 152 P3d 940 (2007)(invalidating arbitration provision in

consumer contract); *Sanchez v. Western Pizza Enters, Inc.*, 2009 Cal. App. LEXIS 371 (March

17, 2009)(affirming trial court's denial of motion to compel arbitration of employment dispute on

grounds the contract was unenforceable due to its unconscionability); *Chalk v. T-Mobile USA,*

*Inc.*, USCA (9th Circuit) No. 06-35090 (March 27, 2009)(finding arbitration provision in

consumer contract unconscionable under Oregon law)

http://www.ca9.uscourts.gov/datastore/opinions/2009/03/27/0635909.pdf.

> **B.    The Instant Arbitration Provision is Unconscionable.**

> Procedural unconscionability generally refers to the conditions of
> contract formation and focuses on two factors: oppression and
> surprise. Oppression arises from an inequality of bargaining power
> which results in no real negotiation and an absence of meaningful
> choice. Surprise involves the extent to which the supposedly
> agreed-upon terms of the bargain are hidden in a prolix printed
> form drafted by the party seeking to enforce the terms.

*Vasquez-Lopez*, 210 Or App at 569.  The arbitration provision at issue in the instant case can

easily be found to be procedurally unconscionable, contained as it is in a "classic contract of

adhesion, that is, an agreement between parties of unequal bargaining power, offered to the

weaker party on a 'take-it-or-leave-it' basis." *Reeves v. Chem Industrial Co.*, 262 Ore. 95, 101,

495 P.2d 729 (1972).  As already stated, that fact is relevant but not dispositive of the issue of

whether the provision is unenforceable.  Rather, "the substantive fairness of the challenged terms

is always an essential issue." *Carey*, 203 Or App at 422-23;

The arbitration provision here requires Reabroy to "submit any claim or dispute arising

STEENSON
SCHUMANN
TEWKSBURY
CREIGHTON and
ROSE, PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

out of or relating to the terms [of her employment agreement] to binding arbitration in Portland, Oregon, by a mutually selected, neutral arbitrator from the United States Arbitration and Mediation (USA&M)."  Documents from USA&M's website show that the pre-collected fee to initiate arbitration for plaintiff will be $470.00 (calculated at $175 per party, plus $60 for each additional party over two).  Pl's Exh 7 (USA&M Fee Schedule).  The Court may take judicial notice that the filing fee to initiate a legal proceeding in federal court is $350.00, regardless of how many parties are named in the suit.  USA&M also imposes a minimum of $500 as cancellation fee within ten days of a scheduled hearing.  Id.  By contrast, there is no penalty for settling a case in federal court at any time prior to or during trial.

USA&M rules of arbitration expressly require the parties to be represented by an attorney. Pl's Exh 8 (USA&M Rules of Arbitration).  By contrast, a litigant in federal court has a right to proceed *pro se*.  It goes without saying that an average minimum wage worker seeking to vindicate his or her employment rights will not be able to afford to pay an attorney, and must find one that is willing to take the arbitration case on a contingent fee basis.  Without a guarantee of attorney fees being awarded, someone with a claim of small monetary value might be unable to pursue arbitration as required by defendants.  Although Reabroy has found such a lawyer, the fact that the arbitration rules require her to be represented should be considered by the court as part of its determination of substantive unconscionability, since those terms existed at the time she was made to sign the contract, a time at which she did not have either a claim nor had she retained counsel.  *Philco-Ford, supra*, 203 Or 701 (unconscionability is determined as of the time of the formation of the contract)

If it were only the arbitration initiation fee, the cancellation fee, and mandatory legal representation that USA&M imposes on those seeking arbitration of claims through its services,

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N   and
R O S E ,      P C
815 S.W. 2nd Ave. #500
Portland, Or.  97204
Tel:  (503)  221-1792

that would be sufficient alone to render the arbitration provision invalid.  When the requirement

that private arbitrator's fees must be shared equally by the parties and *paid in advance*, it is

understood that Reabroy could face the possibility of having to prepay somewhere between

$8,000 and $10,000 for an eight-day hearing, given the average fee charged by a private arbitrator

is between $275 and $300 per hour. Pl's Exh 9 (USA&M Hourly Fees as of 09/01/08).[3]  It is

beyond arguing that Reabroy, making somewhere between $1200 and $1600 per month when she

signed the agreement in question, would be heavily burdened with such fees.  Of course, federal

court judges charge no fees to litigants for their services.

Faced with a similar cost-sharing requirement in a mandatory arbitration provision,

another judge of this Court denied the defendant employer's motion to compel arbitration finding,

among other things, that mandatory arbitration agreement in that case obligated

the plaintiff "to pay thousands of dollars in costs for an arbitration that only Western Directory

desires--costs that LeLouis would not otherwise be obligated to pay--and grants LeLouis nothing

in return."  *LeLouis v. Western Directory Co., supra,* 230 F. Supp. 2d at 1224.  The costs facing

Reabroy if she is forced to arbitrate her claims under defendant's provision are at least as

oppressive as those facing the plaintiff in *LeLouis*.[4]

Coupled with a prohibitively expensive (and hidden) cost-sharing requirement, the

---

[3]This document only mentions mediators in the heading, but the notes beside some of the names makes clear that this includes the hourly fees for arbitration hearings as well.  For example, retired judge Lyle Velure charges $3800 for a full days hearing as well as a $500 cancellation fee within 10 days (which is in addition to the fee charged by the service itself for cancellation of hearings).

[4] The *LeLouis* decision issued prior to the Ninth Circuit deciding either *Circuit City* or *Ferguson, supra*, both of which hold unequivocally that provisions requiring an employee to arbitrate claims and to pay costs beyond what she would to bring her case in court are *per se* unconscionable.

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N   a n d
R O S E ,      P C
815 S.W. 2nd Ave. #500
Portland, Or.  97204
Tel:  (503)  221-1792

arbitration provision at issue curtails discovery in such a way that disproportionately
disadvantages Reabroy, by expressly limiting the time period for discovery to 90 days.    *See*
*Ferguson, supra,* 298 F3d at 785 (discovery limited to two depositions per side, coupled with
cost-sharing requirement, rendered the mandatory arbitration provision unenforceable);
*Armendariz, supra*, 6 P3d at 683-684 ("adequate discovery is indispensable for the vindication of
employment claims where the employer had access to all the information but the claimant did
not").

      Where, typical of all employment case plaintiffs, Reabroy bears the burden of proof, she
will almost certainly need additional time beyond the initial 90 days given automatically in
federal court scheduling orders for document discovery, to obtain discovery documents, take
multiple witness depositions, and to resolve the inevitable discovery disputes that arise out of the
employer's reluctance to produce documents. Creighton Decl, ¶ 2.  Such an absolute time
limitation on discovery can only disadvantage plaintiffs with employment claims, while
benefitting defendant employers unfairly.[5]

      Finally, the arbitration provision does not permit plaintiff the ability to challenge any part
of the contract, since under the terms of the contract, "the arbitrator shall have no authority to
modify, delete or change any provision of this Agreement."  This provision essentially abrogates
any ability plaintiff would ordinarily be able to void or rescind the contract under the substantive
provisions of contract law.

---

    [5]The arbitration provision furthermore expressly denies the arbitrator authority "modify,
delete or change any provision," which plainly means the arbitrator has no authority to extend the
time period for discovery beyond the 90 days granted.  A federal court, by contrast, has the ability
to grant extensions of time for completing discovery, and such extensions are routinely sought
and given in employment cases.

STEENSON
SCHUMANN
TEWKSBURY
CREIGHTON and
ROSE, PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

For the foregoing reasons alone, the Court should find the arbitration provision in this case invalid and thus deny defendants' motion to compel arbitration.

### C.      The Arbitration Provision Does Not Adequately Inform Reabroy of the Waiver of her Rights.

In addition, the arbitration provision here was a single paragraph embedded in an eight-page, single spaced document. By contrast, the arbitration provision at issue in *Motsinger v. Lithia Rose-Ft, Inc.*, 211 Or App 610 (2007), a case relied on by defendants, was deemed to have adequately notified the plaintiff of the nature of what she was agreeing to where the provision dominated the single-paged document it was on, and included the following boldface and uppercase heading: "**COMPREHENSIVE AGREEMENT EMPLOYMENT AT-WILL AND ARBITRATION**", as well as the following sentence:  "**I UNDERSTAND THAT BY VOLUNTARILY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY**."   As the fact section above demonstrates, defendants' agents gave no clear explanation of the arbitration provision to Reabroy, which fact, along with the lack of any emphasis on the provision in a multiple-page document, should allow the Court to find Reabroy was not adequately notified of the rights she would be giving up by agreeing to arbitrate her claims as provided by the "agreement."

### D.      The Arbitration Provision Does Not Apply to All of Reabroy's Claims.

In the instant lawsuit, Reabroy asserts claims that accrued long before she signed the 2005 contract containing the arbitration provision defendants seek to enforce herein.  First, Reabroy's human trafficking claim, which accrued in 2003, does not "arise out of or relate to the terms of" the 2005 contract.  Moreover, defendants admit that the 2005 contract is inapplicable to

S T E E N S O N
S C H U M A N N
T E W K S B U R Y
C R E I G H T O N   a n d
R O S E ,       P C
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel:  (503)  221-1792

disputes between the Klines and Typhoon! employees.  As such, the arbitration provision does

not encompass all of Reabroy's claims and Typhoon! cannot force Reabroy to arbitrate her human

trafficking claim or her claims against the Klines personally for FLSA violations.

     **E.**       **Defendants Have Consented to Jurisdiction of this Court By Utilizing the**

**Discovery Privileges of Federal Court.**

     Defendants claim that, because of the existence of the arbitration agreement, this court

lacks jurisdiction over Reabroy's claims, and she should be compelled to arbitrate those claims,

yet defendants availed themselves of the Court's subpoena power to conduct their own discovery

by issuing a subpoena for Ms. Reabroy's workers' compensation file.  See Creighton Decl, Ex

10.  Defendants should not be rewarded for their inconsistent and unfair conduct by using to their

advantage the Court's powers to enforce third-party subpoenas on the one hand, while asking that

Reabroy be forced  to pursue her claims within a forum that has no enforcement powers over

subpoenas issued.

### CONCLUSION

     For all the foregoing reasons, the Court should find the arbitration provision at issue

unenforceable under Oregon law, and deny defendants' motion to compel arbitration.


     Dated this March 30, 2009.


                      /s/ Beth Creighton
                      BETH CREIGHTON, OSB #97244
                      ZAN TEWKSBURY, OSB #91165
                      Telephone: 503 221-1792
                      Of Attorneys for Plaintiff

STEENSON
SCHUMANN
TEWKSBURY
CREIGHTON and
ROSE, PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel:  (503) 221-1792