Amy R. Alpern, OSB No. 840244
aalpern@littler.com
Neil N. Olsen, OSB No. 053378
nolsen@littler.com
LITTLER MENDELSON, P.C.
121 SW Morrison St., Suite 900
Portland, OR  97204
Telephone: 503.221.0309
Facsimile:  503.242.2457

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

SARINYA REABROY,

               Plaintiff,

    vs.

*TYPHOON!*, INC., STEVE KLINE and
BO KLINE,

               Defendants.

CV 08-1178-HA

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY ACTION PENDING ARBITRATION**

**(ORAL ARGUMENT REQUESTED)**

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
THEIR MOTION TO COMPEL ARBITRATION AND DISMISS
OR STAY ACTION PENDING ARBITRATION

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ........................................................................................... 1

II.     FACTS .......................................................................................................... 1

        A.      Relevant facts .................................................................................. 2

        B.      Relevant Employment Agreement provisions ................................... 5

III.    ARGUMENT ................................................................................................. 6

        A.      The arbitration agreement is neither procedurally or substantively
                unconscionable; it was not the product of deception or compulsion and
                provides for a fair adjudication of all of Ms. Reabroy's claims ........................... 7

                1.      The arbitration agreement is not procedurally unconscionable ................ 7

                2.      The arbitration agreement is not substantively unconscionable ............... 8

                        a.      The arbitration agreement is silent as to arbitration-related
                                costs and speculation as to costs and fees cannot invalidate
                                an agreement to arbitrate ............................................................... 9

                        b.      The arbitration agreement does not force Ms. Reabroy to
                                secure the services of counsel to represent her during the
                                arbitration proceedings ............................................................ 11

                        c.      The arbitration agreement does not unduly limit
                                Ms. Reabroy's ability to obtain discovery ................................. 12

        B.      By the terms of the arbitration agreement and through *Typhoon!*'s
                explanation of the arbitration provision, Ms. Reabroy was put on notice of
                the rights she was foregoing by agreeing to arbitrate ......................................... 16

        C.      The arbitration agreement covers all of Ms. Reabroy's claims ......................... 18

        D.      The arbitration agreement covers the claims against the Klines and the
                Klines, as officers and agents of *Typhoon!*, can enforce the arbitration
                agreement with Ms. Reabroy ..................................................................... 20

        E.      Defendants did not waive their right to compel arbitration ............................... 21

IV.     CONCLUSION.............................................................................................. 23

**Littler Mendelson, PC**
121 SW Morrison St., Suite 900
Portland, OR  97204
Telephone (503) 221-0309
Facsimile (503) 242-2457

# TABLE OF AUTHORITIES

PAGE

## CASES

Allied Sys. Co. v. Marinette Marine Corp.,
1999 WL 632708 (D. Or. Aug. 20, 1999) ........................................................................ 21

Asadourian v. Kuni German Motors, LLC,
2007 WL 4388490 (D. Or. Dec. 13, 2007) ........................................................................ 7

Britton v. Co-op Banking Group,
4 F.3d 742 (9th Cir. 1993) .............................................................................................. 19

City of Portland v. Elec. Lightwave, Inc.,
452 F. Supp. 2d 1049 (2005) ......................................................................................... 15

Comedy Club, Inc. v. Improv West Assoc.,
514 F.3d 833 (9th Cir. 2007) ......................................................................................... 18

Derrick v. Santa Fe Natural Tobacco Co.,
2007 WL 2994598 (D. Or. Oct. 12, 2007) ...........................................................7, 9, 10, 11

Dex Media, Inc. v. Nat'l Mgmt. Svcs., Inc.,
210 Or. App. 376, 150 P.3d 1093 (2007) ........................................................................ 12

Eldridge v. Johnston,
195 Or. 379, 245 P.2d 239 (1952) .................................................................................. 15

Fisher v. A.G. Becker Paribas Inc.,
791 F.2d 691 (9th Cir. 1986) ......................................................................................... 21

Fontaine v. Rent-a-Center West, Inc.,
2006 WL 141606 (D. Or. Jan. 13, 2006) ......................................................................... 14

Gilmer v. Interstate/Johnson Lane Corp,
500 U.S. 20 (1991) ................................................................................................... 14, 18

Green Tree Fin. Corp. v. Randolph,
531 U.S. 79 (2000) .................................................................................................. 7, 9, 11

Hausmann v. Thomas,
2006 WL 2054642 (D. Or. July 21, 2006) ....................................................................... 22

Hulett v. Capitol Auto Group,
2007 WL 3232283 (D. Or. Oct. 29, 2007) ............................................................. 14, 15, 16

Improv West Assocs. v. Comedy Club, Inc.,
129 S.Ct. 45, 2008 WL 1826049 (Oct. 6, 2008) .............................................................. 18

Industra/Matrix Joint Venture v. Pope & Talbot, Inc.,
341 Or. 321, 142 P.3d 1044 (2006) ................................................................................ 12

Letizia v. Prudential Bache Securities, Inc.,
802 F.2d 1185, 1187 (9th Cir. 1986) .............................................................................. 20

Motsinger v. Lithia Rose-Ft, Inc.,
211 Or. App. 610, 156 P.3d 156 (2007) ..................................................................... passim

Page ii – DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION
AND DISMISS OR STAY ACTION PENDING ARBITRATION

**Littler Mendelson, PC**
121 SW Morrison St., Suite 900
Portland, OR  97204
Telephone 503.221.0309
Facsimile 503.242.2457

# TABLE OF AUTHORITIES

**PAGE**

PacifiCare Health Systems, Inc. v. Book,
    538 U.S. 401 (2003)..........................................................................................12

Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    7 F.3d 1110 (3d Cir. 1993) .............................................................................20

Prograph Intern. Inc. v. Barhydt,
    928 F. Supp. 983 (N.D. Cal. 1996) .................................................................20

Roque v. Applied Materials, Inc.,
    2004 WL 1212110 (D. Or. Feb. 20, 2004) ......................................................18

Simpson v. Lifestyles, LLC,
    2008 WL 1882838 (D. Or. Apr. 24, 2008).................................................11, 18

Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.,
    198 F.3d 88 (2d. Cir. 1999), cert. denied, 531 U.S. 815 (2000)..........................19

Snow Mountain Pine v. Tecton Laminates Corp.,
    126 Or. App. 523, 869 P.2d 369, rev. denied, 319 Or. 36, 876 P.2d 782 (1994).................18

Sprague v. Quality Rests. Northwest, Inc.,
    213 Or. App 521, 162 P.3d 331 (2007)............................................................7, 8

Stations West, LLC v. Pinnacle Bank of Oregon,
    2007 WL 1219952 (D. Or. Apr. 23, 2007).................................................10, 21

Union County Sch. Dist. No. 1 v. Valley Inland Pac. Constructors, Inc.,
    59 Or. App. 602, 652 P.2d 349 (1982)..............................................................19

Vasquez-Lopez v. Beneficial Oregon, Inc.,
    210 Or. App. 553, 152 P.3d 940 (2007)....................................................8, 9, 11

Volt Info. Sciences v. Leland Stanford Jr. Univ.,
    489 U.S. 468 (1989)..........................................................................................12

Wagner v. Stratton Oakmont, Inc.,
    83 F.3d 1046 (9th Cir. 1993) ...........................................................................18

Wilbur-Ellis Co. v. Hawkins,
    155 Or. App. 554, 964 P.2d 291 (1998).............................................................21

## STATUTES

ORS 36.600–36.740 ...................................................................................................12

ORS 36.610 ...............................................................................................................12

ORS 36.670 ...............................................................................................................12

ORS 36.675 ....................................................................................................13, 16, 22

ORS 72.3020 .............................................................................................................15

Page iii – DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION
AND DISMISS OR STAY ACTION PENDING ARBITRATION

**Littler Mendelson, PC**
121 SW Morrison St., Suite 900
Portland, OR  97204
Telephone 503.221.0309
Facsimile 503.242.2457

## I.    INTRODUCTION

A valid agreement to arbitrate exists that covers all the claims at issue.  Ms. Reabroy's Opposition to Defendants' Motion to Compel Arbitration does nothing to undermine this fact. She does not and cannot meet her burden of showing that the arbitration agreement is unconscionable and her other arguments are legally and factually flawed or incomplete.

Specifically, (1) the arbitration agreement is neither procedurally or substantively unconscionable; it was in no way the product of deception or compulsion and provides for a fair adjudication of all of Ms. Reabroy's claims; (2) by the terms of the agreement and through *Typhoon!*'s exhaustive efforts, Ms. Reabroy was specifically advised, in both English and in her native language, of the rights she was foregoing by agreeing to arbitrate; (3) all of her claims clearly "arise out of or relate to" the Employment Agreement; (4) the Klines, as corporate officers and signatories to the Employment Agreement, are subject to the arbitration agreement; and (5) Defendants did not waive their right to compel arbitration by issuing a single subpoena duces tecum.

This Reply Memorandum is supported by the accompanying Declaration of Neil N. Olsen ("Olsen Decl."), the Declarations of Stephen Kline ("Kline Decl.") and Chanukrit "Oat" Thienkalaya ("Thienkalaya Decl.") filed in support of Defendants' opening Memorandum in Support, and the pleading and papers on file herein.

## II.    FACTS

Plaintiff's Opposition Memorandum disputes none of the facts set forth in Defendants' Memorandum in Support; it instead introduces numerous "facts" irrelevant even to Plaintiff's erroneous legal analysis.

Page 1 – DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION
AND DISMISS OR STAY ACTION PENDING ARBITRATION

A.    **Relevant facts**

In 2003, Ms. Sarinya Reabroy sought out work with *Typhoon!* in order to continue her romantic relationship with "Tui," a then *Typhoon!* employee, and seek out "new experiences." Olsen Decl., Ex. 1 at 5, 14 (Reabroy Depo. at 19:9–22:10; 87:16–88:5). As part of her application to work for *Typhoon!* she presented it a resume in which she represented as a "personal skill" "English spoken and written." Id., Ex. 1 at 3 at 14 (Reabroy Depo. at 12:17–13:16), Ex. 4 (Depo. Ex. 101). Indeed, she had studied English for six years before coming to the United States. Id., Ex. 1 at 2 (Reabroy Depo. at 7:17–8:25).

Ms. Reabroy started working for *Typhoon!* after signing an Employment Agreement for Employees on E-2 Visas ("Employment Agreement") and obtaining entry into the United States. Kline Decl. ¶¶ 3–5. Approximately two years later in 2005, after turning down opportunities to return to Thailand on airline tickets paid for by *Typhoon!*, Ms. Reabroy decided to renew her Employment Agreement. Id. ¶ 6.

*Typhoon!* had changed the Employment Agreement for 2005, including adding to it an arbitration agreement. Olsen Decl., Ex. 3 at 2 (Kline Depo. at 11:12–11:18). *Typhoon!* sought to ensure that the employees who would be signing the Employment Agreement were aware of the changes and the impact they would have on each party to the Agreement. Id., Ex. 3 at 3 (Kline Depo. at 31:8–32:20).

In March 2005, Ms. Reabroy attended a meeting of *Typhoon!* employees present in the United States on E-2 Visas at which changes to the Employment Agreements were discussed. Thienkalaya Decl. ¶ 9; Olsen Decl., Ex. 2 at 7–8, 10–14 (Thienkalaya Depo. at 30:2–31:16; 33:14–37:11), Ex. 1 at 9 (Reabroy Depo. at 42:23–44:22). The discussion included identification of the arbitration agreement contained within the Employment Agreement by Chanukrit "Oat"

Thienkalaya, a *Typhoon!* Manager and "E-2 Coordinator," who served as the human resources liaison to employees from Thailand who were in the United States on E-2 Visas. Thienkalaya Decl. ¶¶ 4–5. Mr. Thienkalaya is a native Thai speaker who is fluent in English and holds a M.B.A. from Oregon State University. Thienkalaya Decl. ¶¶ 2–3. In addition to discussing with the employees the terms of the Employment Agreement, including the arbitration provision, and making himself available for questions, Mr. Thienkalaya provided each of the employees in attendance a memorandum in both English and Thai explaining the changes to the Employment Agreement, including the arbitration provision. See Olsen Decl., Exs. 2 at 7–8, 10–14, 23 (Thinekalaya Depo. at 30:2–31:16; 33:14–37:11; 50:14–50:17), 5 (Depo. Ex. 105), 6 (Depo. Ex. 107).

The English version of the explanatory memorandum provides in relevant part, as follows:

**9.    Arbitration**

The Change:
This specifies that employees with a grievance and the company will agree to impartial and binding arbitration to resolve disputes and grievances.

The Impact:
The goal is to resolve a problem with fairness, speed and efficiency and without the need to become involved in a lengthy and expensive legal matter.

Id., Ex. 6 at 3.

The Thai version of the explanatory memorandum (which was produced by both Ms. Reabroy and *Typhoon!* in discovery, see id., Exs. 5 (Depo. Ex. 105), 7 (Depo. Ex. 113)), as translated back into English by Oat Thienkalaya at his deposition, provides as follows for this same provision:

Page 3 – DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION
AND DISMISS OR STAY ACTION PENDING ARBITRATION

>Provision 9, the arbitration changes[:]  This change specifically said that if the
>employee has a complaint on – the employee agrees to have the arbitration
>outside the court who has the fairness and neutral[.]  [T]he impact[:]  The purpose
>of this change is to make sure that to correct the problem in the fairness and also
>in efficient way without getting into the court which has the expensive cost and
>the length of time.

Id., Ex. 2 at 5–6 (Thienkalaya Depo. at 27:10–28:2), Ex. 6 (Depo. Ex. 107); see also id., Ex. 2 at 24 (Thienkalaya Depo. at 56).

On March 15, 2005, Ms. Reabroy signed an acknowledgement indicating that she received the explanatory memorandum and returned it to Mr. Thienkalaya (the acknowledgment she signed was in Thai and was apparently attached to the Thai translated version of that memorandum).  Id., Ex. 2 at 20–22 (Thienkalaya Depo. at 43:20–45:17), Exs. 5 (Depo. Ex. 105), 7 (Depo. Ex. 113), 8 (Depo. Ex. 106); id., Ex. 1 at 10 (Reabroy Depo. at 47:2–48:13).  She admits that (1) she understood that the memorandum explained the changes between the 2003 and 2005 Employment Agreements: (2) she had an opportunity to read the Thai-translated version of the memorandum; and (3) she had an opportunity to ask questions regarding the memorandum, but did not do so.  Id., Ex. 1 at 11(Reabroy Depo. at 69:10–71:6).

After discussing the terms of the E–2 renewal Agreements and providing the employees the explanatory memorandum, Mr. Thienkalaya presented Ms. Reabroy and the other employees the Agreements in English (see Ex. 9 (Depo. Ex. 104)) with a translation into Thai (see Ex. 10 (Depo. Ex. 103)).  Id., Ex. 2 at 13–17 (Thienkalaya Depo. at 36:24–40:1), Ex. 1 at 8, 12–13 (Reabroy Depo. at 73:15–73:25).  After reviewing the Agreement and taking whatever steps she deemed reasonable, during the apparent 16 day period in which the renewal Agreement was in her possession, including the opportunity to seek the advice of counsel as advised by the Agreement itself, Ms. Reabroy signed it on April 1, 2005, and returned it to Mr. Thienkalaya.

Page 4 – DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION
AND DISMISS OR STAY ACTION PENDING ARBITRATION

**Littler Mendelson, PC**
121 SW Morrison St., Suite 900
Portland, OR  97204
Telephone 503.221.0309
Facsimile 503.242.2457

Id., Ex. 2 at 18 (Thienkalaya Depo. at 41:1–41:11), Ex. 1 at 8, 12–13 (Reabroy Depo. at 38:7–38:19; 76:5–76:15; 78:14–78:21)

A year later, on March 28, 2006, Ms. Reabroy executed her second renewal Employment Agreement with *Typhoon!*. Id., Exs. 1 at 12 (Reabroy Depo. at 74:1–74:14), 11 (Depo. Ex. 109). The 2006 Agreement contains an arbitration provision, as well as all other relevant provisions, identical to that of the 2005 Agreement. See id., Exs. 9 (Depo. 104), 11 (Depo. 109). Furthermore, like in 2005, Mr. Thienkalaya presented Ms. Reabroy with the Agreement and made himself available to answer any questions Ms. Reabroy had and to provide her a translation of the Agreement. After taking the Agreement for review, Ms. Reabroy signed it and returned it to Mr. Thienkalaya without question. Thienkalaya Decl. ¶¶ 9–10

### B.    Relevant Employment Agreement provisions

The arbitration clause in the 2005 and 2006 Agreements provides as follows:

> The parties hereto hereby agree to submit any claim or dispute arising out of or relating to the terms of this Agreement to binding arbitration in Portland, Oregon, by a mutually selected, neutral arbitrator from the United States Arbitration and Mediation; provided, however, that *Typhoon!* is not precluded from seeking injunctive relief in a court of competent jurisdiction for Employee's alleged violation of Section 7 above [Confidentiality and Non-Disclosure]; and further provided that parties shall have any right to discovery as would be permitted by the Federal Rules of Civil Procedure for a period of ninety (90) days following commencement of such arbitration, and the arbitrator thereof shall resolve any dispute which arises in connection with such discovery. In rendering a decision, the arbitrator shall have no authority to modify, delete or change any provision of this Agreement, and judgment upon the award rendered therein may be entered in any court having jurisdiction.

Kline Decl., Ex. 2 at 7 (bracket added).

The 2005 and 2006 Agreements contain several other clauses relevant to the instant issue.

Under the heading "Counsel," the Agreements provide as follows:

> Employee agrees, recognizes and acknowledges that this Agreement was drafted by counsel for *Typhoon!* for *Typhoon!*'s benefit. Employee acknowledges

that s/he has been advised to have this Agreement reviewed by his/her own independent counsel, to have this Agreement explained to him/her by that independent counsel and, if appropriate, to have this Agreement translated into whatever language Employee deems appropriate for complete understanding of this Agreement.

Id., Ex. 2 at 8, Ex. 4 at 8.

Under the heading "Complete Agreement," the Agreements provide as follows:

This Agreement and the Noncompetition and Nonsolicitation Agreement signed by Employee upon commencement of employment with *Typhoon!* constitute the entire agreement between the parties on the subjects herein and supersede all prior agreements, understandings and proposals (whether written or oral) with regard to Employee's employment with *Typhoon!*.

Id., Ex. 2 at 8, Ex. 4 at 8.

Under the heading "Choice of Law and Venue," the Agreements provide as follows:

This Agreement shall be interpreted and construed in accordance with the laws of the State of Oregon regardless of conflict of laws provisions.  Venue for any cause of action arising from or relating to the terms of this Agreement and/or Employee's employment with *Typhoon!* shall be proper only in the County of Multnomah in the State of Oregon.

Id., Ex. 2 at 7, Ex. 4 at 7.

Finally, under the heading "Severability," the Agreements provide as follows:

If any provision of this Agreement is judicially declared to be invalid, unenforceable or void by a court of competent jurisdiction, such decision shall not have the effect of invalidating or voiding the remainder of this Agreement, and the part or parts of this Agreement so held to be invalid, unenforceable or void shall be deemed to have been deleted from this Agreement, and the remainder of this Agreement shall have the same force and effect as if such part or parts had never been included.

Id., Ex. 2 at 8, Ex. 2 at 8.

### III.    ARGUMENT

This Court should grant Defendants' Motion to Compel to Arbitration because a valid

arbitration agreement exists that covers the claims at issue.  Ms. Reabroy's attack on the

Page 6 – DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION
AND DISMISS OR STAY ACTION PENDING ARBITRATION

arbitration agreement fails.  She does not and cannot meet her burden of showing that the arbitration agreement is unconscionable and her other arguments are legally and factually flawed or incomplete.

> **A.    The arbitration agreement is neither procedurally or substantively unconscionable; it was not the product of deception or compulsion and provides for a fair adjudication of all of Ms. Reabroy's claims.**

As a general matter, "[t]he burden is on the party opposing arbitration to proffer evidence demonstrating that the [arbitration] agreement is invalid."  Asadourian v. Kuni German Motors, LLC, 2007 WL 4388490, at *4 (D. Or. Dec. 13, 2007) (citing Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 91–92 (2000)).  Furthermore and specifically, the party asserting unconscionability bears the burden of demonstrating that the arbitration clause is unconscionable.  See id. at *5 (citing Sprague v. Quality Rests. Northwest, Inc., 213 Or. App 521, 525, 162 P.3d 331 (2007)).  Finally, and as set forth in Defendants' opening memorandum, while procedural and substantive unconscionability are relevant to the inquiry, it is "only substantive unconscionability that is absolutely necessary."  Sprague, 213 Or. App. at 525–26, 162 P.3d 331.  At bottom, Ms. Reabroy fails to meet her burden.

> **1.    The arbitration agreement is not procedurally unconscionable.**

"Procedural unconscionability is not demonstrated merely because an employee did not negotiate any of the language in an employment agreement; unequal bargaining power, by itself, is insufficient to establish that an agreement is unconscionable."  Derrick v. Santa Fe Natural Tobacco Co., 2007 WL 2994598, at *3 (D. Or. Oct. 12, 2007) (citations omitted).  The establishment of procedural unconscionability usually requires a finding of deception, compulsion, or lack of genuine consent.  See Sprague, 213 Or. App. at 525, 162 P.3d 331; Motsinger v. Lithia Rose-Ft, Inc., 211 Or. App. 610, 615, 156 P.3d 156 (2007).

In this case, even if one were to assume that, as Ms. Reabroy argues, *Typhoon!* was in a superior bargaining position relative to her and offered her the Employment Agreement on a "take-it-or-leave-it" basis, that alone does not establish procedural unconscionability. Thus, Ms. Reabroy is left to prove some indicia of deception, compulsion, or lack of genuine consent. She has not and cannot make such a proof. Each time she signed the Employment Agreement, including the operative 2006 Agreement, she was given ample opportunity to review the Agreement, ask questions regarding its content, seek interpretation of any terms she did not understand, and seek counsel regarding its terms. See supra Part II.A. Furthermore, *Typhoon!* explained the arbitration clause within the Employment Agreement to all of its Thai-speaking employees, including Ms. Reabroy, and then gave to those employees a Thai-translated version of the Agreement and a Thai-translated explanation of changes to the Agreement, including the addition of the arbitration agreement. See id.

In sum, Ms. Reabroy does not and cannot meet her burden of proving that the arbitration agreement was procedurally unconscionable.

### 2.      The arbitration agreement is not substantively unconscionable.

To prove substantive unconscionability, the party opposing the arbitration agreement must demonstrate that the effect of the arbitration agreement is so one-sided or unreasonable as to undermine substantive fairness. See Sprague, 213 Or. App. at 525, 162 P.3d 331; Motsinger, 211 Or. App. at 626, 156 P.3d 156. It is only "[i]n those rare instances in which our courts have declared contractual provisions unconscionable"; instances in which "there existed 'serious procedural and substantive unfairness.'" Motsinger, 211 Or. App. at 627, 156 P.3d 156 (citing, inter alia, Vasquez-Lopez v. Beneficial Oregon, Inc., 210 Or. App. 553, 573–76, 152 P.3d 940 (2007)) (emphasis added).

**Littler Mendelson, PC**
121 SW Morrison St., Suite 900
Portland, OR  97204
Telephone 503.221.0309
Facsimile 503.242.2457

In an effort to meet her burden of proving that this is one of those "rare instances," Ms. Reabroy has asserted three bases for substantive unconscionability; that the agreement allegedly (1) forces her to incur arbitration-related costs above those for which she would be responsible if the action were litigated in the courts; (2) forces her to secure the services of counsel to represent her during arbitration proceedings; and (3) unduly limits her ability to obtain discovery. She is incorrect on all three counts and does not meet her burden of proving that the agreement is substantively unconscionable. The arbitration agreement is even-handed and provides for the fair adjudication of claims; it is not one of those "rare instances."

> a.    **The arbitration agreement is silent as to arbitration-related costs and speculation as to costs and fees cannot invalidate an agreement to arbitrate.**

While it is true that under Oregon law[1] an arbitration agreement that requires an employee to share in the up-front payment of arbitrator's fees is most likely substantively unconscionable, see Vasquez-Lopez, 210 Or. App. at 573–75, 152 P.3d 940, it is also the case under Oregon law that "an arbitration agreement's silence on [] who would bear the costs of arbitration, alone, is 'plainly insufficient to render it unenforceable,' and the possibility that a plaintiff could be 'saddled with prohibitive costs is too speculative to justify invalidation of an arbitration agreement,'" Derrick, 2007 WL 2994598, at *4 (citing and quoting Motsinger, 156 P.3d at 162 (which in turn quoted Green Tree, 531 U.S. at 90-91)); see also Motsinger, 211 Or. App. at 618, 156 P.3d 156 ("We will not invalidate the arbitration clause simply because of the possibility that plaintiff, if she were to lose, would bear some undetermined costs of arbitration.").

In this case, the arbitration agreement is silent as to who will bear the costs of arbitration

---

[1] As set forth in Defendants' opening memorandum and uncontested by Ms. Reabroy, the unconscionability analysis is conducted under applicable state law; here Oregon law. Plaintiff's citation to Ninth Circuit cases interpreting California law carries little, if any, effect where Oregon law speaks to the question.

**Littler Mendelson, PC**
121 SW Morrison St., Suite 900
Portland, OR  97204
Telephone 503.221.0309
Facsimile 503.242.2457

and thus cannot be determined substantively unconscionable based upon speculation as to what costs Ms. Reabroy may incur.  Contrary to Ms. Reabroy's assertions, the arbitration agreement does not incorporate the USA&M fee schedule or rules.  It merely references USA&M as the source from which the parties will select a neutral arbitrator, much as parties sometimes agree to retired judges as the pool from which they will select an arbitrator.  In relevant part, the arbitration agreement specifically provides as follows: "The parties hereto hereby agree to submit any claim or dispute arising out of or relating to the terms of this Agreement to binding arbitration in Portland, Oregon, by a mutually selected, neutral arbitrator from the United States Arbitration and Mediation."  Kline Decl., Ex. 2 at 7, Ex. 4 at 7.

Merely referencing an arbitration service as the source for selecting a neutral arbitrator does not implicitly incorporate that service's fees and rules; to overcome the "speculative" hurdle, the arbitration agreement must expressly allocate a share of the arbitration costs to the plaintiff or, in the least, expressly incorporate a fee schedule or rules regime that so allocates the costs of arbitration.  See Derrick, 2007 WL 2994598, at *4 (rejecting plaintiff's attempt to "meet her burden of demonstrating that the arbitration clause is unconscionable by speculating that because the Agreement provides that the 'rules of the American Arbitration Association as then in effect apply,' the Agreement's silence as to fees invokes the [AAA rules] that mandate that the arbitrator's fees 'shall be borne equally by the parties'"); Stations West, LLC v. Pinnacle Bank of Oregon, 2007 WL 1219952, at *5 (D. Or. Apr. 23, 2007) ("I do not find the arbitration provision to be substantively unconscionable.  I note there is nothing in the arbitration provision requiring that the claim be administered by the American Arbitration Association, only that the arbitrator follow the Rules of the [AAA].  As a result, the initial filing fees and case service fees for filing with [AAA] are inapplicable . . . [and] 'the "risk" that [plaintiff] will be saddled with

prohibitive costs is too speculative to justify invalidation of the arbitration agreement.'") (citations omitted) (fourth bracket in original); see also Vasquez-Lopez, 210 Or. App. at 574, 152 P.3d 940 (emphasizing that unlike the agreement in Green Tree, the subject agreement expressly allocated costs, requiring no speculation as to the share the plaintiff would bear).

Furthermore, while Defendants recognize that unconscionability is evaluated from the time of the arbitration agreement's execution, Defendants wish to "underscore" the speculative nature of any arbitration costs to which Ms. Reabroy may be subject by stipulating that Defendants will pay all filing fees, administrative fees, and arbitrator's fees (above those filing fees, etc. that Ms. Reabroy would be required to pay in federal court) for any arbitration conducted under to the parties' agreement, subject to the arbitrator's final determination of liability for fees and costs in accordance with applicable law. See Derrick, 2007 WL 2994598, at *4 n.1; Simpson v. Lifestyles, LLC, 2008 WL 1882838, at *4 (D. Or. Apr. 24, 2008).

In sum, Ms. Reabroy does not and cannot meet her burden of proving that the arbitration agreement is substantively unconscionable based upon an express allocation of arbitration costs to her. The agreement is completely silent as to costs and arbitration agreements cannot be invalidated based upon speculation as to who will bear the costs of arbitration.

### b. The arbitration agreement does not force Ms. Reabroy to secure the services of counsel to represent her during the arbitration proceedings.

As a preliminary matter, Ms. Reabroy has forwarded no authority for the proposition that a party has a fundamental, non-waiveable right to represent him or herself in an arbitration proceeding. Nevertheless, and again contrary to Ms. Reabroy's assertions, the arbitration agreement does incorporate the USA&M rules regarding the parties' retention of counsel or otherwise. Absent such rules, nothing would prevent an arbitrator from allowing Ms. Reabroy to

**Littler Mendelson, PC**
121 SW Morrison St., Suite 900
Portland, OR  97204
Telephone 503.221.0309
Facsimile 503.242.2457

proceed in a pro se manner.  See ORS 36.670 ("A party to an arbitration proceeding may be represented by a lawyer admitted to practice in this state or any other state.").[2]  Furthermore and in any event, whether or not Ms. Reabroy would be allowed to proceed in arbitration without counsel is purely speculative and courts will not invalidate an arbitration agreement based upon speculation.  See, generally, PacifiCare Health Systems, Inc. v. Book, 538 U.S. 401, 407 (2003) ("since we do not know how the arbitrator will construct the remedial limitations . . . the proper course is to compel arbitration").  Finally, underscoring the speculative nature of Ms. Reabroy's argument, Defendants, for what it is worth, stipulate that they will not contest Ms. Reabroy arbitrating her claims without the assistance of counsel.  Based upon Ms. Reabroy's current and able representation, Defendants imagine Ms. Reabroy will not call in such a stipulation.

### c.    The arbitration agreement does not unduly limit Ms. Reabroy's ability to obtain discovery.

In Ms. Reabroy's final effort to meet her burden of proving that the arbitration agreement is substantively unconscionable, she contends that the arbitration agreement unduly limits her ability to obtain discovery.  She is factually and legally in error.

As a factual matter, the arbitration agreement places no definitive limits are either parties' ability to obtain discovery.  Contrary to Ms. Reabroy's  construal of the agreement's terms, it

---

[2] As set forth above, supra Part II.B, the Employment Agreement provides that Oregon law governs its interpretation, see Kline Decl., Ex. 2 at 7, Ex. 4 at 7, which includes, of course, interpretation of its arbitration provision.  Accordingly, except as preempted by federal law, Oregon law governs the interpretation and implementation of the parties' arbitration agreement.  See Dex Media, Inc. v. Nat'l Mgmt. Svcs., Inc., 210 Or. App. 376, 382,150 P.3d 1093 (2007) (citing, inter alia, Volt Info. Sciences v. Leland Stanford Jr. Univ., 489 U.S. 468, 478 (1989); Industra/Matrix Joint Venture v. Pope & Talbot, Inc., 341 Or. 321, 330, 142 P.3d 1044  (2006)).  Thus, where the Federal Arbitration Act or the parties' agreement does not provide otherwise, the arbitrator's authority is governed by the Oregon Revised Uniform Arbitration Act ("RUAA"), ORS 36.600–36.740; in other words Oregon's RUAA provides a default baseline for arbitration procedure in Oregon.  See ORS 36.610(1) (providing that "Except as otherwise provided by this section, a party to an agreement to arbitrate or an arbitration proceeding may waive, or the parties may vary the effect of, the requirements of ORS 36.600 to 36.740 to the extent permitted by law").

**Littler Mendelson, PC**
121 SW Morrison St., Suite 900
Portland, OR  97204
Telephone 503.221.0309
Facsimile 503.242.2457

provides a floor for the parties' right to discovery rather than a ceiling.  Specifically, and as is

relevant, the arbitration agreement provides as follows:

> [P]arties shall have any right to discovery as would be permitted by the Federal
> Rules of Civil Procedure for a period of ninety (90) days following
> commencement of such arbitration, and the arbitrator thereof shall resolve any
> dispute which arises in connection with such discovery.  In rendering a decision,
> the arbitrator shall have no authority to modify, delete or change any provision of
> this Agreement, and judgment upon the award rendered therein may be entered in
> any court having jurisdiction.

Kline Decl., Ex. 2 at 7, Ex. 4 at 7.

The "floor" effect is evidenced by the express language of the arbitration agreement.  It

provides that the parties "shall have any right to discovery as would be permitted by the Federal

Rules of Civil Procedure for a period of ninety (90) days following commencement of such

arbitration" (emphasis added); it does not provide that they shall not have more.  The arbitration

agreement in no way prohibits the arbitrator from allowing additional discovery; the only

limitation the arbitration agreement puts upon the arbitrator is in regard to modifying, deleting,

or changing any provision of the Employment Agreement.  Allowing discovery in addition to the

90–day floor provided for in the arbitration agreement would not require such modification,

deletion, or change.

Beyond this guaranty of 90 days of discovery under the federal rules, Oregon's

RUAA provides for discovery within arbitration proceedings.  As set forth in relevant part by

ORS 36.675 (which as provided above, supra note 2, is part of the default baseline for arbitration

proceedings under the arbitration agreement):

> \* \* \*
>
> (2) In order to make the proceedings fair, expeditious and cost-effective,
> upon request of a party to or a witness in an arbitration proceeding, an arbitrator
> may permit a deposition of any witness to be taken for use as evidence at the
> hearing, including a witness who cannot be subpoenaed for or is unable to attend

Page 13 – DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION
AND DISMISS OR STAY ACTION PENDING ARBITRATION

a hearing.    The arbitrator shall determine the conditions under which the deposition is taken.

(3) An arbitrator may permit such discovery as the arbitrator decides is appropriate in the circumstances, taking into account the needs of the parties to the arbitration proceeding and other affected persons and the desirability of making the proceeding fair, expeditious and cost-effective.

(4) If an arbitrator permits discovery under subsection (3) of this section, the arbitrator may order a party to the arbitration proceeding to comply with the arbitrator's discovery-related orders, issue subpoenas for the attendance of a witness and for the production of records and other evidence at a discovery proceeding, and take action against a noncomplying party to the extent a court could if the controversy were the subject of a civil action in this state.

\* \* \*

Thus, as a practical matter, the arbitration agreement guarantees Ms. Reabroy the same discovery rights she would experience in federal court for 90 days and the prospect of even greater rights beyond that 90 days; there is nothing to say that the chosen arbitrator would not allow greater discovery than a federal judge operating under the federal rules.  This discovery regime far exceeds the legal standard for enforceable arbitration agreements, which has been described as something "more than minimal discovery" but something less "than what is allowed in federal court."  See Hulett v. Capitol Auto Group, 2007 WL 3232283, at *5 (D. Or. Oct. 29, 2007) (citing, inter alia, Gilmer v. Interstate/Johnson Lane Corp, 500 U.S. 20, 31 (1991); Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1482 (D.C. Cir. 1997)); see also Fontaine v. Rent-a-Center West, Inc., 2006 WL 141606, at *3 (D. Or. Jan. 13, 2006) ("Although the Agreement's discovery provisions are more limited than that allowed in federal court, the United States Supreme Court was not persuaded by the same argument.  'Although those procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'  Gilmer, 500 U.S. at 31 (internal quotations omitted).  I also note that the arbitrator

**Littler Mendelson, PC**
121 SW Morrison St., Suite 900
Portland, OR  97204
Telephone 503.221.0309
Facsimile 503.242.2457

can approve additional discovery beyond what is allowed under the Agreement.  This is an important point.").

Finally, even if the agreement could be read (which it cannot) to place an impermissible limitation on discovery, the Court may and should sever the limitation from the arbitration agreement to preserve its enforceability.  As set forth in Hulett, "Oregon law is well settled that when a contract contains partly legal and partly illegal terms, the legal parts remain enforceable." 2007 WL 3232283, at *6  (citing City of Portland v. Elec. Lightwave, Inc., 452 F. Supp. 2d 1049, 1075 (2005) (which in turn cites Eldridge v. Johnston, 195 Or. 379, 405, 245 P.2d 239 (1952)); see also ORS 72.3020(1) (providing in the UCC sale of goods context: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.").  "Moreover, 'if there is an explicit severability clause, the court must construe that clause in a manner that best reflects the intent of the entity that enacted it.'"  Hulett, 2007 WL 3232283, at *6  (citing City of Portland, 452 F. Supp. 2d at 1075).  In Hulett, the court applied these standards to sever a offending discovery limitation in an arbitration agreement, noting that:

> The invalid part of the arbitration agreement is a single, isolated discovery clause and is easily severed from the Arbitration Agreement.  Further, as evidenced by the language in the Arbitration Agreement, the parties expressly agreed that invalid provisions would be severed.  Thus, the offending discovery provisions are not an integral part of the agreement so as to require invalidation of the entire agreement.

Id.

As set forth above, supra Part II.B, in this case, as in Hulett, the Employment Agreement includes a severability clause which applies to the arbitration agreement.  See Kline Decl., Ex. 2

**Littler Mendelson, PC**
121 SW Morrison St., Suite 900
Portland, OR  97204
Telephone 503.221.0309
Facsimile 503.242.2457

at 8, Ex. 4 at 8.   Furthermore, like in <u>Hulett</u>, the only challenged provision is a discovery

provision that that is not integral to the operation of the arbitration agreement and can be severed

if necessary.  The result would be the default discovery provisions of ORS 36.675, as set forth

above, which provide for the opportunity for adequate discovery.

 In sum, the arbitration agreement's guaranty of 90 days of discovery under the federal

rules and the arbitrator's authority to provide for additional discovery provide Ms. Reabroy much

more than the "minimal amount of discovery" required by courts in this context.  Furthermore, to

the extent the arbitration agreement could be construed to impermissibly limit discovery, the

challenged provisions should be severed to ensure the enforceability of the parties' agreement to

arbitrate.

  **B.**  **By the terms of the arbitration agreement and through *Typhoon!*'s**
    **explanation of the arbitration provision, Ms. Reabroy was put on notice of**
    **the rights she was foregoing by agreeing to arbitrate.**

 Relying upon <u>Motsinger v. Lithia Rose-Ft, Inc.</u>, 211 Or. App. 610, 156 P.3d 156 (2007),

Ms. Reabroy erroneously argues *Typhoon!* did not adequately notify her of "the rights she would

be giving up"  because the arbitration agreement is contained within an "eight-page, single

spaced document" and defendants allegedly did not clearly explain to her the arbitration

provision.  Pl. Opposition at 12.

 As a preliminary matter, "[a] party is presumed to be familiar with the contents of any

document that bears the person's signature." <u>Motsinger</u>, 211 Or. App. at 616–17, 156 P.3d 156

(citations omitted).

 In addition to highlighting the above-stated presumption, the Court in <u>Motsinger</u>, in

upholding the subject arbitration agreement, noted that the plaintiff failed to show that she (1)

"was in any way confused by the forms or misled into signing them"; (2) was "surprised by the

**Littler Mendelson, PC**
121 SW Morrison St., Suite 900
Portland, OR  97204
Telephone 503.221.0309
Facsimile 503.242.2457

terms of the arbitration clause"; or (3) was not aware of the arbitration clause because is was "hidden or disguised" from her. Id. While the court in Motsinger noted that the subject arbitration agreement was set forth on a one-page document with certain language emphasized, it did not hold that all agreements must be set forth in such a manner.

With the presumption set forth by Motsinger in mind, there is no question Ms. Reabroy signed the operative Employment Agreement. See Olsen Decl. Ex. 1 at 12 (Reabroy Depo. at 74:1–74:14). Furthermore, there is no evidence that Ms. Reabroy was in any way confused by the arbitration agreement, misled into signing the Employment Agreement containing the arbitration agreement, surprised by its terms, or unaware of the arbitration agreement because it was hidden or disguised from her.

To the contrary, and as set forth in detail above, see supra Part II, *Typhoon!* went to great lengths to ensure that the changes to the Employment Agreement, including the arbitration clause were identified and explained. *Typhoon!* held meetings with all employees subject to the Employment Agreement, including Ms. Reabroy; provided the employees, including Ms. Reabroy, a memorandum in English and Thai identifying and explaining the changes to the Employment Agreement, including the addition of an arbitration agreement and the fact that it would result in the resolution of disputes in "arbitration outside the court"; provided them Thai-translated versions of the Employment Agreement; gave them the opportunity to ask questions regarding the Agreement; gave them the opportunity to take it home for review; and, as memorialized by the "Counsel" provision of the Employment Agreement, advised them to seek out independent legal counsel and translation services.

In sum, Ms. Reabroy is presumed to be familiar with the contents and effect of agreements that bear her signature. She has not and cannot put forth any evidence whatsoever

Page 17 – DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY ACTION PENDING ARBITRATION

that Defendants deceived her as to the arbitration agreement (or any other matter) or compelled her to sign the Employment Agreement containing the arbitration agreement.  To the contrary, the evidence shows that *Typhoon!* went above and beyond what is required or even expected of it.

### C.    The arbitration agreement covers all of Ms. Reabroy's claims.

Ms. Reabroy fails to meet her burden of proving that certain of her claims fall outside the scope of the arbitration agreement.  "The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Roque v. Applied Materials, Inc., 2004 WL 1212110, at *9 (D. Or. Feb. 20, 2004) (citing Gilmer, 500 U.S. at 26).  "In determining the scope of the arbitration clause, the court applies state law principles of contract interpretation 'while giving due regard to the federal policy in favor of arbitration by resolving ambiguities . . . in favor of arbitration.'" Id. (citing, inter alia, Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1993)).  As otherwise stated by the courts, "[i]t is well-settled that where a contract contains an arbitration clause, there is a 'presumption of arbitrability.'" Simpson, 2008 WL 1882838, at *2 (quoting Comedy Club, Inc. v. Improv West Assoc., 514 F.3d 833, 842 (9th Cir. 2007)[3]) (further citation omitted).  Accordingly, "[a] request for an order compelling arbitration 'should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute' and any doubts 'should be resolved in favor of coverage.'" Id.; see also Snow Mountain Pine v. Tecton Laminates Corp., 126 Or. App. 523, 529, 869 P.2d 369, rev. denied, 319 Or. 36, 876 P.2d 782 (1994).

With the contours of the federal policy favoring arbitration in mind, and as set forth in

---

[3] Which as since been vacated on other grounds.  See Improv West Assocs. v. Comedy Club, Inc., 129 S.Ct. 45, 2008 WL 1826049 (Oct. 6, 2008).

Page 18 – DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY ACTION PENDING ARBITRATION

**Littler Mendelson, PC**
121 SW Morrison St., Suite 900
Portland, OR  97204
Telephone 503.221.0309
Facsimile 503.242.2457

Defendants' opening memorandum, the arbitration agreement, with its broad scope and unambiguous language, encompasses all of Ms. Reabroy's claims. Ms. Reabroy agreed to "submit any claim or dispute arising our of or relating to the terms of this Agreement to binding arbitration." Kline Decl., Ex. 4 at 7. The arbitration agreement's "arising out of or relating to" language has the broadest possible scope under both Oregon and federal law. See, e.g., Union County Sch. Dist. No. 1 v. Valley Inland Pac. Constructors, Inc., 59 Or. App. 602, 608, 652 P.2d 349 (1982) ("arising out of or relating to" arbitration clause was "general and all-encompassing"); Britton v. Co-op Banking Group, 4 F.3d 742, 745 (9th Cir. 1993) ("arising out of or relating to" clause was "broad on its face, and in fact, it is routinely used in many securities and labor agreements to secure the broadest possible coverage"). Furthermore, where, as here, an arbitration agreement "does not contain any temporal limitation," the "relevant inquiry" is whether the subject claim falls within plainly worded scope of the agreement. Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 99 (2nd. 1999), cert. denied, 531 U.S. 815 (2000) ("As the arbitration clause here . . . does not contain any temporal limitation, the relevant inquiry is whether [the] claims 'relat[e] to any obligation or claimed obligation under' the 1994 Agreement, not when they arose.") (second bracket in original).

Therefore, considering the arbitration agreement's use of language indicating the "broadest possible scope" and its lack of any "temporal limitation," at the time she signed the 2005 and 2006 Employment Agreements, Ms. Reabroy agreed to arbitrate all existing and future claims related to her employment with *Typhoon!*. Furthermore, and in any event, the only claim Ms. Reabroy argues falls outside the scope of the arbitration agreement (other than the claims against the Klines which will be addressed below) is her "human trafficking claim," which

Page 19 – DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY ACTION PENDING ARBITRATION

allegedly accrued in 2003.  See Pl. Opposition at 12.  Besides being devoid of any factual or legal basis, Ms. Reabroy's "human trafficking" and inextricably related "involuntary servitude" claims plainly fall within the broad scope of the arbitration agreement.  To even to begin to meet her burden on such claims she would have to prove that her continued employment under the 2005 and 2006 Employment Agreements was compelled in a way proscribed by federal and Oregon statutes, and Defendants' defenses to such claims would undoubtedly be heavily grounded in the fact that she decided not to return to Thailand and voluntary signed the 2005 and 2006 Agreements.[4]

> **D.    The arbitration agreement covers the claims against the Klines and the Klines, as officers and agents of *Typhoon!*, can enforce the arbitration agreement with Ms. Reabroy.**

Contrary to Ms. Reabroy's unsupported assertion, Defendants have in no way admitted that the Klines are not subject to the arbitration agreement between Ms. Reabroy and *Typhoon!*. As set forth in Defendants' opening Memorandum, "[t]he Ninth Circuit has held that, pursuant to the strong federal policy favoring arbitration, 'nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles.'" Prograph Intern. Inc. v. Barhydt, 928 F. Supp. 983, 990 (N.D. Cal. 1996) (quoting Letizia v. Prudential Bache Securities, Inc., 802 F.2d 1185 (9th Cir. 1986)) (other citations omitted).  "Other courts have also held that a nonsignatory officer, agent or representative of one of the parties to an arbitration agreement may compel the other party to arbitrate claims against him or her arising from or in connection with that agreement." Id. (citing Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121–22 (3d Cir. 1993) for the proposition that "[b]ecause a principal is bound

---

[4] Indeed, when she signed the 2006 Employment Agreement, she had been subject to the "Prior Notice of Compliant or Grievance" provision of the 2005 Agreement (see Kline Decl., Ex. 2 at 6–7) for almost one year and did not notify *Typhoon!* of any complaint or grievance.

**Littler Mendelson, PC**
121 SW Morrison St., Suite 900
Portland, OR  97204
Telephone 503.221.0309
Facsimile 503.242.2457

under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements.").

In this case, the claim against the Klines is for allegedly "participating in and assisting ongoing discrimination and retaliation against plaintiff based on her opposition to unlawful employment practices." See Complaint ¶ 49.  This claim plainly arises out of or relates to the terms of the subject Employment Agreement, and the Klines are indisputably officers and agents of *Typhoon!*.  In fact, they both signed the operative Agreement as corporate officers.  See Kline Decl., Ex. 4 at 9.  Thus, the claim against them should be arbitrated with the claims against *Typhoon!*.

## E.    Defendants did not waive their right to compel arbitration.

Ms. Reabroy wrongly asserts that Defendants waived their right to compel arbitration by issuing a single subpoena duces tecum to *Typhoon!*'s workers' compensation insurance carrier.  "Waiver of a contractual right to arbitration is not favored.  Any examination of whether the right to compel arbitration has been waived must be conduced in light of the strong federal policy favoring enforcement of arbitration agreements." Allied Sys. Co. v. Marinette Marine Corp., 1999 WL 632708, at *10 (D. Or. Aug. 20, 1999) (quoting Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986)).  "Thus, any party arguing waiver bears a heavy burden of proof.  In order to prove that a party waived its right to compel arbitration, the opposing party must demonstrate: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." Id.  (citing Fisher, 791 F.2d at 694); see also Stations West, 2007 WL 1219952, at *3 (setting forth same standards and three-prong test) (citations omitted); Wilbur-Ellis Co. v. Hawkins, 155 Or. App. 554, 557–58, 964 P.2d 291 (1998) (setting forth same

**Littler Mendelson, PC**
121 SW Morrison St., Suite 900
Portland, OR  97204
Telephone 503.221.0309
Facsimile 503.242.2457

standards and three-prong test) (citations omitted); <u>Hausmann v. Thomas</u>, 2006 WL 2054642, at *3–4 (D. Or. July 21, 2006) (setting forth similar standards and same three-prong test) (citations omitted).

Ms. Reabroy cannot meet this heavy burden.  In <u>Hausmann</u>, the party moving to compel arbitration had engaged in discovery for five months.  2006 WL 2054642, at *3.  The court determined that "the parties have not engaged in <u>extensive litigation</u> or other activities that would demonstrate [that the moving party] did not intend to seek arbitration."  <u>Id.</u> (emphasis added).  The court also noted that it was uncontested that the "discovery for this litigation is likely the same discovery the parties would have to engage in for purposes of arbitration."  <u>Id.</u>  In other words, the discovery activities in which the moving party engaged failed to rise to a sufficient level to be considered "inconsistent acts" and, in any event, were not prejudical to the opposing party.

Similarly, in this case, Defendants have not engaged in "extensive litigation" by issuing a single subpoena duces tecum to *Typhoon!*'s workers' compensation insurance carrier.  If five months of litigation activity in <u>Hausmann</u>, which included discovery, does not constitute "extensive litigation" so as to meet the "inconsistent acts" prong of the waiver test, surely a single subpoena duces tecum to *Typhoon!*'s own insurance company does not rise to the necessary level.  Furthermore, Ms. Reabroy has not and cannot prove that she was prejudiced by Defendants issuing the subpoena.  Like in <u>Hausmann</u>, the subpoena would have been issued in arbitration either under the arbitration agreement's 90-day federal rules provision or pursuant to the arbitrator's powers under ORS 36.675.  Indeed, one of Ms. Reabroy's claims is for "Workers' Compensation Discrimination."  Complaint ¶¶ 33–36.  In sum, Ms. Reabroy cannot meet the heavy burden of proving that Defendants waived their right to compel arbitration.

**Littler Mendelson, PC**
121 SW Morrison St., Suite 900
Portland, OR  97204
Telephone 503.221.0309
Facsimile 503.242.2457

# IV.    CONCLUSION

Based on the foregoing, *Typhoon!* and the Klines respectfully request that this Court grant their Motion in its entirety and enter an order (1) compelling Ms. Reabroy to arbitrate her claims in accordance with the Employment Agreement; and (2) dismissing this action, or, in the alternative, staying it pending arbitration.


Dated:  April 13, 2009.

Respectfully submitted,

LITTLER MENDELSON, P.C.


/s/ Amy R. Alpern
Amy R. Alpern, OSB No. 840244
aalpern@littler.com
Neil N. Olsen, OSB No. 053378
nolsen@littler.com

Attorneys for Defendants

Page 23 – DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION
AND DISMISS OR STAY ACTION PENDING ARBITRATION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 13, 2009, I served a full, true and correct copy of the

foregoing DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION

TO COMPEL ARBITRATION AND DISMISS OR STAY ACTION PENDING

ARBITRATION, via the Court's CM/ECF system, on:

> Beth Creighton
> J. Ashlee Albies
> Zan Tewksbury
> Steenson, Schumann, Tewksbury
>   Creighton & Rose, P.C.
> 500 Yamhill Plaza Building
> 815 SW Second Avenue
> Portland, OR  97204

> Of Attorneys for Plaintiff

> By  /s/ Amy R. Alpern
>      Amy R. Alpern

Firmwide:89396793.1 061118.1001
4/13/09

**Littler Mendelson, PC**
121 SW Morrison St., Suite 900
Portland, OR  97204
Telephone (503) 221-0309
Facsimile (503) 242-2457