

**STOLL BERNE**
Stoll Stoll Berne Lokting & Shlachter P.C. Lawyers

Robert A. Shlachter
rshlachter@stollberne.com

July 6, 2011

<u>SENT VIA US MAIL and EMAIL</u>

Amy Alpern                                   Beth Creighton
Littler Mendelson, P.C.                      Creighton & Rose, P.C.
121 SW Morrison St., Ste. 900                815 SW 2nd Ave., Ste. 500
Portland OR  97204                           Portland, OR 97204
Email: aalpern@littler.com                   Email: beth@civilrightspdx.com

    Re:    *Reabroy v. Typhoon! & Steve and Bo Kline*
              ASP No. 100921-2

Dear Ms. Alpern and Ms. Creighton:

    Enclosed for your files are copies of the following rulings and award signed on
July 6, 2011:

    (A)    (1) Ruling on Motion to Reopen Arbitration Hearing;
             (2) Ruling on Protective Order Issues;
             (3) Arbitration Award Opinion; and

    (B)    Money Award

    I will retain the originals of the enclosed documents in our office for future reference.

Very truly yours,

Robert A. Shlachter

RAS:dh
Enclosure
cc (all w/encl):Albert J. Bannon
           Susan K. Eggum
           James J. Damis
{SSBLS Main Documents\7833\004\00304499-1 }

209 Southwest Oak Street    Portland, Oregon 97204    Tel (503) 227-1600    Fax (503) 227-6840

BEFORE THE ARBITRATION SERVICE OF PORTLAND, INC.

In the Matter of the Arbitration between:

SARINYA REABROY,

              Claimant,

      v.

*TYPHOON!*, STEVE KLINE, and BO KLINE,

            Respondents.

ASP No. 100921-2

(1) RULING ON MOTION TO REOPEN ARBITRATION HEARING;

(2) RULING ON PROTECTIVE ORDER ISSUES; AND

(3) ARBITRATION AWARD OPINION

Claimant Sarinya Reabroy (Claimant) filed a complaint on October 8, 2008 in the United States District Court of Oregon ("Original Complaint"). The Original Complaint asserted claims for human trafficking in violation of 18 USC § 1590, et. seq., and ORS 30.867; claims for national origin discrimination in violation of 42 USC § 1981, Title VII,  ORS Chapter 659A.030; claims for workers compensation discrimination in violation of ORS 659; a claim for sexual harassment in violation of Title IV and ORS 659.0303(1)(a) and (b); a claim for retaliation in violation of 42 USC § 1981, Title IV, 29 USC § 207 and ORS Chapter 659;  a claim for aiding and abetting in violation of ORS 659A.030(1)(g); a claim for intentional infliction of emotional distress; and claims for wage and hour violations pursuant to 29 USC § 207 and ORS 653.261.

      After proceedings before the Ninth Circuit Court of Appeal, the dispute, as framed by the Original Complaint, was transferred to arbitration proceedings pursuant to an agreement of the parties that required arbitration of the dispute.  The arbitration was administered under the rules

of the Arbitration Service of Portland ("ASP"), with the agreement that Respondents Typhoon!, Steve Kline and Bo Kline ("Respondents") advance all arbitration fees.

A three person arbitration panel ("the panel") was selected and empanelled, composed of Albert J. Bannon ("Bannon"), Susan K. Eggum ("Eggum") and Robert A. Shlachter. Mr. Shlachter was appointed Chief Arbitrator.

Throughout the arbitration proceedings, including the hearing, Claimant was represented by Beth Creighton and Michael Rose of Creighton & Rose, P.C., and Respondents were represented by Amy Alpern of Littler Mendelson, P.C.

The arbitration hearing commenced on March 9, 2011, and continued on March 10, 14, 15, 16, 17, 18, May 4, 5, 6 and 9. All evidence was submitted as of May 6, 2011 and all parties rested their cases as of that date. On May 8, 2011, in response to the panel's request, Claimant served an Amended Complaint ("Amended Complaint"). She re-alleged each of the above claims for relief set forth in her Original Complaint, and dropped claims for violations of ORS 30.867, for sexual harassment in violation of Title IV and ORS 659.0303(1)(a) and (b), for retaliation in violation of 42 USC § 1981, Title IV, 29 USC § 207 and ORS Chapter 659, and for aiding and abetting in violation of ORS 659A.030(1)(g).

Closing argument was heard on May 9, 2011.

The panel views the Amended Complaint as the operative pleading for purposes of the claims of relief and requested relief and remedies sought by Claimant.

1.  Claimant's Motion to Reopen the Hearing

On May 12, 2011, Claimant filed a motion to reopen the hearing. Claimant asserts that she is entitled to reopen the hearing and submit additional evidence because (1) a witness, Kolbi Anderson, contacted Claimant for the first time on or after May 10, 2011, and (2) on May 11,

Page 2 -  ARBITRATION RULINGS AND AWARD OPINION

2011 a Notice of Substantial Evidence Determination by the Oregon Civil Rights Division-
Bureau of Labor & Industries (Notice of Substantial Evidence) was issued, following a
September 7, 2010 complaint by Brad Avakian, Oregon Commissioner of the Bureau of Labor
and Industries.

Respondents opposed the motion.

The panel denies the motion to reopen the hearing to submit additional evidence.
Claimant could have deposed or called Ms. Anderson as a witness. The fact that Claimant did
not know the witness had information allegedly helpful to Claimant is not sufficient reason to
reopen the hearing.

Regarding Claimant's post-hearing offer in evidence of the Notice of Substantial
Evidence Determination, the panel recognizes that such determinations are admissible. *Plummer
v. Western Int'l Hotels Co.,* 656 F.2d 502, 505 (9th Cir. 1981). However, the Notice issued post-
hearing reflects determinations not specific to Claimant; that were not reached after the Agency's
or the respondent's utilization of rules of civil procedure governing discovery; and that were not
reached following cross examination of witnesses, or of Claimant. The panel may take judicial
notice of the finding of substantial evidence of discrimination, but will not admit the
determinations in evidence.

2. Protective Order Issues

Several issues have been raised regarding the Stipulated Protective Order, dated January
10, 2011 ("Protective Order"), that should be addressed. First, to clarify, documents such as
repair bills, maintenance records and city permits shall not be deemed to be "confidential" under
the terms of the Protective Order.

Second, there is no provision in the Protective Order requiring or even discussing return or destruction of documents at the conclusion of litigation, although such a provision is common in protective orders and presumably could have been negotiated. The Arbitration Panel will not insert a provision that does not exist in the negotiated and stipulated Protective Order. However, the Protective Order does provide clear limits on the use of documents deemed confidential and such provisions, among others, survive the conclusion of the present litigation.

3.  Award

    A.  First Claim for Relief (Human Trafficking under 18 USC sec. 1590, et seq)

Much of the evidence presented was offered in support of or in defense of the claim for human trafficking. The terms of Claimant's employment contracts were the result of unequal bargaining positions. There was no evidence, however, that any of the terms found in the E2 Visa Thai worker's employment contracts, or in Claimant's contracts, imposed obligations prohibited as a matter of law, or conferred rights on Typhoon! that are prohibited as a matter of law. The fact that Typhoon's American citizen workers did not sign these employment contracts is insufficient to establish a violation of the human trafficking statute. To the extent Typhoon! imposed such contractual obligations on E2 Visa Thai workers and not on other workers, then other statutory remedies address such conduct.

Nor was there evidence that Claimant was persuaded to leave Thailand to come to work for Typhoon! under materially false pretenses. The preponderance of the evidence did establish that the E2 Visa Thai cooks, including Claimant, believed they had no choice but to work for Typhoon! for the duration of their employment contracts. The evidence was undisputed that the vast majority of E2 Visa Thai cooks who return to Thailand after completing their employment contract term then elect, on their own volition, to leave Thailand and return to the same work for

Typhoon!. There was no evidence that Thai workers who returned to Thailand after completing their Typhoon! contract and who then decided to return to Typhoon! felt compelled to do so based on any conduct on the part of respondents.

The evidence was also undisputed that the vast majority of the E2 Visa Thai workers, including Claimant, who worked at Typhoon! did not wish to return to Thailand.

While it may be evidence of overbearing management, the evidence that Claimant was threatened with deportation back to Thailand if she did not perform well in her job did not rise to proof of a violation of the human trafficking statute.

Nor did the evidence establish that respondents' reports to immigration agencies of Thai workers who were out of compliance with their E2 Visas, and respondents' attempts to have those workers arrested and deported, violated any law or federal regulations. Evidence that respondents made known to other E2 Visa Thai workers that going out of compliance with their Visa could result in an arrest and deportation is again evidence of heavy handed management, however, such a communication is not unlawful.

Additionally, Claimant offered evidence that she and other E2 Visa Thai workers were told, or encouraged, to work hours for which they would not be paid. The panel does not find this evidence probative of a violation of the human trafficking statute. Many U.S. employers employing American citizens fail to pay wages that are due. There are statutory remedies that specifically bar and penalize such conduct.

Similarly, evidence that Claimant was discouraged from filing and criticized for filing a worker's compensation claim for an injury is not evidence of a violation of the human trafficking statute. Again, there are statutory remedies that specifically bar and penalize such conduct.

Page 5 - ARBITRATION RULINGS AND AWARD OPINION

Further, the panel notes that respondents did not control or dictate the type, location, or condition of Claimant's housing or the housing of other E2 Visa Thai workers. The evidence was that Claimant chose her own housing.

Lastly, evidence was submitted by the parties as to whether respondents have abused the regulatory schemes governing E2 Specialty Employee Visas. Respondent Steve Kline confirmed that he has dined in Thailand; that the dishes respondent Bo Kline prepares are different and superior; and that no other existing Thai restaurants serve the quality of dishes served by Typhoon! Respondent Bo Kline testified that all Thai cooks must be "re-trained" to prepare the unique dishes of Typhoon!. Respondent Steve Kline testified that he and Bo Kline consider the way Typhoon! prepares the dishes on its menu so unique in the world that their recipes are "trade secrets."

The panel found persuasive the evidence that respondents import Thai workers whose skills in the preparation of Thai dishes are no greater than skills possessed by American or Thai-American workers, particularly in the preparation of the "unique" dishes that respondent Bo Kline claims are served by Typhoon! Respondent Steve Kline admitted that Typhoon! will hire as a cook the spouse of an E2 Visa Thai worker. In that event, Typhoon! trains the E2 Visa spouse at its restaurants in how to prepare its "unique" dishes. Respondent Bo Kline admitted that the decision to import Thai workers on contracts with a specified duration was due, in part, to the "high turnover" of other cooks employed by Typhoon! Notably, Respondent Bo Kline testified that Thai workers work "harder" and "faster" than other workers.

The evidence indicates that respondents may be abusing the treaty scheme for E2 Specialty Employee Visas by importing Thai cooks who do not possess essential, unique or special skills as compared to American or Thai American cooks.

Nevertheless, the panel does not find precedent in decisions of the federal courts addressing the human trafficking statute that would make this fact probative of a violation of the statute. While Section 1589 prohibits obtaining the labor of a person by means of abuse of law, Section 1589 requires a further finding that such abuse was done "to exert pressure" to cause a person "to take some action or refrain from taking some action." Whatever abuse respondents may be committing of the regulatory E2 Visa Specialty Worker scheme, that abuse was either not known to the Thai workers or, if known, would have been irrelevant to their view of their qualifications to gain a job in the U.S. working for Typhoon!.

In addition, the panel finds that the E2 Visa Thai workers wish to come to work at Typhoon!; the E2 Visa workers are not materially misled about the conditions of working for Typhoon! at the time they first sign a contract of employment; after returning to Thailand, the vast majority of E2 Visa workers renew their employment contracts with Typhoon! and return to the U.S. to continue to work for Typhoon!; E2 Visa workers encourage friends and family members to apply for a job at Typhoon!; Typhoon!, at no charge to the employee, provides the E2 Visa workers with return airfare to Thailand when their employment contracts are completed; the E2 Visa workers receive health insurance and paid vacations and two free meals a day; Claimant chose twice, without coercion, to renew her employment contract with Typhoon! and had the opportunity at each renewal to return at Typhoon!'s expense to Thailand where her family owned a small restaurant; Claimant was asked if she wanted to transfer between Typhoon! locations and have a different manager and declined that opportunity; Claimant was a member of a health club and worked out at the club; Claimant was offered a modified work assignment after she suffered a hand injury; like other E2 Visa workers, Claimant was provided

health insurance and paid vacation days; and, like Claimant, other E2 Visa workers choose where to live, how to live, and with whom to live while they work for Typhoon!

After consideration of all the evidence, the panel unanimously determines that Claimant has not established by a preponderance of the evidence a violation of 18 USC § 1590, et. seq. Other statutory remedies address Claimant's contentions regarding her right to be free from national origin discrimination, her right to invoke workers compensation protections, and her right to be paid wages owed.

> B. Second Claim for Relief (National Origin Discrimination under 42 USC § 1981 and Title VII)

A majority of the panel (Arbitrators Eggum and Bannon) has determined that the preponderance of the evidence established Claimant's 42 USC § 1981, Title VII and ORS Chapter 659A.030(1) claims for national origin discrimination against respondents Typhoon!, Steve Kline and Bo Kline. Respondents did not contend that any of the contract terms Typhoon! entered with E2 Visa Thai workers or with Claimant were the result of equal bargaining positions.

The undisputed evidence was that contracts of employment were signed by all E2 Visa Thai workers, including Claimant, but not by American citizen workers. The 27 month contract Claimant signed March 28, 2006 is a twelve page, single space document. Among other clauses addressing compliance with Claimant's E2 Visa status, the contract contains a number of unfair or onerous clauses that do not arise out of Claimant's immigration status. These clauses include a requirement that Claimant "indemnify" Typhoon! for all "damages, costs and fees" it incurs in connection with any breach of the contract; a unilateral termination clause in favor of Typhoon! which it can exercise without notice; a clause requiring Claimant to pay for the cost of "hiring

and training of a replacement" estimated by the contract to be $2,000.00, in the event Claimant

quits or is terminated for cause; a clause that bars Claimant from using any "confidential"

information relating to Typhoon! including use or disclosure of "trade secrets"; and a clause

barring Claimant from any communications with the media concerning the "practices" or

concerning the employees of Typhoon! without "express prior written consent of the Klines." It

is undisputed that this contract was signed by Steve Kline, Bo Kline and Claimant.

Claimant contends that other events and conduct evidence national origin discrimination.

Arbitrators Eggum and Bannon will not address that evidence or its sufficiency. The execution

by the Klines of contracts of employment solely with Thai national workers, which contracts

contain unfair or onerous terms that do not arise out of the worker's immigration status, is

sufficient evidence alone of a national origin bias.

Claimant is awarded the following damages against all respondents:

> (1) Non-economic damages in the amount of $100,000.00.
>
> (2) Attorney fees and costs pursuant to 42 USC § 1988 and ORS
> 659A.885(1).
>
> (3) No punitive damages are awarded.
>
> (4) No injunctive relief was sought and, therefore, none is awarded.

Arbitrator Shlachter dissents and states that, in his opinion: (a) Claimant failed to meet

her burden of establishing national origin discrimination; and (b), in any event, Claimant failed

to meet her burden of establishing any damages resulting from the alleged discrimination.

C. Third Claim for Relief (ORS Chapter 659A Workers Compensation
Discrimination)

A majority of the panel (Arbitrators Eggum and Bannon) has determined that the

preponderance of the evidence established Claimant's workers compensation discrimination

claim against respondent Typhoon!  The testimony of the manager of the NW Everett Street,

Portland, Oregon restaurant, Nunda Sybim ("Nuch"), and Claimant differed as to whether

Claimant was discriminated against in connection with a hand and wrist injury she suffered

beginning April 2007.  Claimant testified that neither the owners nor managers of Typhoon!

informed her of her rights under the workers compensation laws.  Claimant testified that she

learned from a medical professional that treated her injury that she had the right to fill out and

submit to Typhoon! a workers compensation form.  Claimant testified that when she asked Nuch

for the form, Nuch asked her in a raised voice: "You want to sue the company?!"  Claimant

testified that she then left in tears.  Claimant testified that when she returned to work the next

day, Nuch grabbed the hand of Claimant that was injured, stated that Claimant had walked out on

her the day before, and stated that Claimant could have the workers compensation form to fill

out, if Claimant apologized for her conduct.  Claimant testified that Nuch threw the form in

Claimant's direction.  After Claimant submitted the form, Claimant testified that Nuch harassed

Claimant for having filed a workers compensation claim by belittling Claimant, by telling her to

toughen up, by asking why she was making it harder for others by submitting the form, and by

suggesting that Claimant could have said the injury took place at her gym.

Nuch has been the "head chef" of the NW Everett Street restaurant since 1998.  Nuch

testified that she is friends with Steve and Bo Kline, that she does not know who her supervisor

is, but that Bo Kline is "ahead of her," and that she is "never" criticized by Bo Kline.  Nuch

testified that she "never" called Claimant "bad words" and that she "never" got mad at Claimant. Nuch testified that when Claimant hurt her hand and wrist, she told Claimant about her workers compensation rights, and told her to get medical treatment. Then Nuch testified that she "felt sensitive" because Claimant had not asked her for the workers compensation form. Nuch admitted that in this conversation Claimant cried and that Nuch "felt regret." Nuch admitted that the next day she grabbed Claimant's arm (not the injured hand), stating that she was "sorry" and "felt bad." Nuch categorically denied ever belittling or harassing plaintiff in any way at any time and certainly not in connection with Claimant's request to fill out a workers compensation form or as a result of Claimant's submission of the form to Typhoon! The majority of the panel finds Claimant more credible than Nuch as to the events and conversations triggered by Claimant's injury on the job.

Claimant is awarded the following damages:

       (1) Non-economic damages in the amount of $150,000.00.

       (2) Attorney fees and costs pursuant to ORS 659A.885(2).

       (3) No punitive damages are awarded.

       (4) No injunctive relief was sought and, therefore, none is awarded.

Arbitrator Shlachter dissents and states that, in his opinion (a) Claimant failed to meet her burden of establishing workers compensation discrimination; and (b), in any event, Claimant failed to meet her burden of establishing any damages resulting from the alleged discrimination.

The panel unanimously determines that respondents Bo Kline and Steve Kline are not liable under the Third Claim for Relief.

D. Fourth Claim for Relief (Intentional Infliction of Emotional Distress)

The panel unanimously determines that Claimant failed to meet her burden of establishing a claim for intentional infliction of emotional distress against any respondent.

E. Fifth Claim for Relief (Wage and Hour Violations)

The panel unanimously determines that Claimant has established by a preponderance of the evidence her claims under 29 USC § 207 and ORS 653.261 against Typhoon! to the extent of recovering for her unpaid overtime since October 8, 2005.

As "head chef" at the NW Everett Street restaurant, no party disputed that Nuch set an example for the E2 Visa Thai cooks. Nuch admitted that the cooks' 52 hour work week was sometimes not long enough for the cooks to complete their work. Nuch admitted that she "would kill the time" by sorting basil for recipes and would do this work during the break between shifts. Nuch testified that when she saw cooks working off the clock, she would tell them to stop. Nuch also admitted that, when she did observe cooks work off the clock, she did not adjust their time to assure pay for time incurred.

Claimant and other witnesses called by Claimant testified that in order to complete the tasks assigned to them, they would come in early before their shift started, begin the work, and then clock in at the shift start time. At times, clean up tasks would be performed at the end of the dinner shift after clocking out at the end of the shift. Claimant and other witnesses called by Claimant also testified that often the work of carving carrots was taken home and done there. Claimant and other witnesses called by Claimant testified that Nuch observed these off the clock activities and said nothing about it. The majority of the panel finds that the more credible evidence is that, while Nuch may have made statements that working off the clock should not be done, when such work was observed, it was not corrected and payroll, including Claimant's

Page 12 - ARBITRATION RULINGS AND AWARD OPINION

payroll, was not adjusted.

Claimant is awarded the following damages:

(1) $7,714.12 for unpaid overtime plus prejudgment interest.

(2) $7,714.12 in liquidated damages pursuant to 29 USC § 216(b).

(3) $2,722.50 in penalties pursuant to ORS 653.055 and ORS 652.150.

(4) Attorney fees and costs pursuant to 29 USC § 216(b) and ORS 653.055.

(5) No other relief is awarded.

The panel unanimously determines that respondents Bo Kline and Steve Kline are not liable under the Fifth Claim for Relief.

To the extent not set forth above, all other claims for relief or requests for equitable or monetary damages or other remedies are denied.

DATED this _6th_ day of July, 2011.

By the Undersigned Arbitrators:

Robert A. Shlachter, Chief Arbitrator

Albert J. Bannon, Arbitrator

Susan K. Eggum, Arbitrator

## BEFORE THE ARBITRATION SERVICE OF PORTLAND, INC.

In the Matter of the Arbitration between:

SARINYA REABROY,

        Claimant,

      v.

*TYPHOON!*, STEVE KLINE, and BO KLINE,

        Respondents.

ASP No. 100921-2

MONEY AWARD

 

To comply with the special requirements of ORS 36.685 (a section of Oregon's version of the Revised Uniform Arbitration Act that requires the information itemized in ORS 18.042 for judgments that include the payment of money), a majority of the Arbitration Service of Portland panel sets forth below the following information:

<u>MONEY AWARD</u>

| | |
|---|---|
| Award Creditor(s): | Sarinya Reabroy<br>c/o Creighton & Rose, P.C.<br>815 SW 2nd Avenue, Suite 500<br>Portland OR 97204 |
| Attorney for Award Creditor(s): | Beth Creighton<br>Creighton & Rose, P.C.<br>815 SW 2nd Avenue, Suite 500<br>Portland OR 97204<br>503.221.1792 |
| Award Debtor(s): | Typhoon! [as to full Award]<br>Steve Kline [as to portion of Award]<br>Bo Kline [as to portion of Award]<br>7800 SW Durham Road, Suite 500<br>Tigard, OR 97223 |
| Attorney for Award Debtor(s): | Amy R. Alpern<br>Littler Mendelson, P.C.<br>121 SW Morrison Street, Suite 900<br>Portland OR 97204<br>503.221.0309 |

1

Principal Amount of Award:            $268,150.74 [as to Debtor Typhoon! only],
                                      $100,000 [Debtors Bo Kline and Steve Kline for
                                      $100,000 (in the aggregate) of the total $268,150.74
                                      Award].  Total Award does not exceed $268,150.74
                                      in the aggregate.

Pre-Award Interest only:              As to Debtor Typhoon! only, 9% per annum, simple
                                      interest on the principal amount of $7,714.12
                                      [which is a portion of the total Award]  from and
                                      after relevant pay periods starting in October 2005

Total amount of Award upon which
Post-award interest shall accrue:     As to Debtor Typhoon! only: $268,150.74, plus
                                      prejudgment interest on $7,714.12, attorney fees
                                      and costs with simple interest is to accrue at rate of
                                      9% per annum from and after the date of Award;

                                      As to Debtors Bo Kline and Steve Kline, post-
                                      award interest on $100,000 of the total $268,150.74
                                      award, plus attorney fees and costs awarded against
                                      Debtors Bo Kline and Steve Kline with simple
                                      interest is to accrue at rate of 9% per annum from
                                      and after the date of Award

Attorney Fees and Costs (ASP Rule 33):   $_____ (as to Debtor Typhoon!)(to be
awarded in a Supplemental

                                      awarded pursuant to ASP Rule 34)

                                      Debtors Bo Kline and Steve Kline shall be liable
                                      for _____, which is a portion of (and not in
                                      addition to) the attorneys' fees and costs awarded
                                      above.

2

DATED this 6th day of July, 2011.

By the Undersigned Arbitrators:

_____
Albert J. Bannon, Arbitrator

_____
Susan K. Eggum, Arbitrator